856 So.2d 1133 (2003)
Anthony McAuthur LEE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-3488.
District Court of Appeal of Florida, First District.
October 22, 2003.
*1134 Ted A. Stokes, Milton, for Appellant.
Charlie Crist, Attorney General and Robert R. Wheeler, Assistant Attorney *1135 General, Office of the Attorney General, Tallahassee, for Appellee.
PER CURIAM.
At issue in this appeal is the validity of a police search of the appellant's motel room. The appellant moved to suppress the evidence seized from the room, but the trial court denied the motion. Subsequently the appellant entered a plea of nolo contendere reserving his right to appeal. Because the trial court erred in ruling that exigent circumstances justified a warrantless entry into the motel room, we reverse the denial of the motion to suppress.
A confidential informant notified police that Phillip Dumas, a man known to Pensacola police as a drug dealer, had told the informant about a supply of cocaine that was being delivered to a local motel. Based on this information, the police arranged for the informant and the drug dealer to go to the motel and purchase cocaine from the suppliers. Although the police had a plan for the operation, events did not unfold as they had anticipated.
The police staked out the motel, fitted the informant with a wire and gave him a cell phone. They also gave him $2500 with which to purchase a quantity of cocaine. The police planned for the informant to travel together with Dumas to the motel by taxi, but, at the last minute, Dumas decided to drive separately in his own vehicle. The informant took a taxi and met him at the motel.
Although the officers expected the suppliers to be in room 305 of the motel, Dumas went instead to room 306 and then to room 309. Observing this movement, the officers inferred that all three rooms may be involved in the drug transaction. In fact, only room 309 was involved and there were only two suppliers, the appellant herein, Anthony Lee, and his cohort, Johnny Curtis.
The purchase took place in room 309. Over the wire the informant was wearing, the officers monitored the conversation between the informant, Dumas, Lee and Curtis, as a large quantity of cocaine was purchased for $2500. The informant said a prearranged code word over the wire to notify the police that the deal was taking place. According to the taped conversation, money was being counted out, and a quantity of cocaine was being kept on the counter by the sink next to the bathroom.
Originally, the officers had planned to allow the drug transaction to take place, wait for the informant and Dumas to leave together in a taxi, stop the taxi and arrest Dumas and (purportedly) the informant. They also had intended to maintain security on the room where the deal had occurred and to obtain a warrant to search the room. However, faced with circumstances different from those anticipated by their plan, the officers decided to enter room 309 without a warrant.
Officers went to the door, knocked and announced that law enforcement was present, then broke open the door with a battering ram. Upon entering, they observed cocaine and money in plain view. Four men were inside the room: the informant, Dumas, Lee and Curtis. The police asked for permission to search the room, advising them that, if they did not consent, the officers would obtain a warrant. The room occupants, including Lee, consented to a search of the room.
After seizing the drugs and other items, the officers arrested Lee and charged him with trafficking in cocaine, in violation of section 893.03(2)(a)4., Florida Statutes. Lee moved to suppress the cocaine, drug paraphernalia and other items seized from his motel room, along with any statements he had made to police. He contended that the warrantless entry into the room violated *1136 his Fourth Amendment rights and that, therefore, all evidence seized incident to the illegal entry should have been suppressed.
At the hearing on the motion, the trial court found that there was probable cause to enter the room and that exigent circumstances justified entering without a warrant. On that basis the trial court denied the motion. We review de novo the trial court's application of the law to the facts in ruling on a motion to suppress. See Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999); Sims v. State, 805 So.2d 44, 46 (Fla. 1st DCA 2001); State v. T.W., 783 So.2d 314, 315 (Fla. 1st DCA 2001).
Law enforcement officers may not enter a legally occupied motel room without a warrant. "[F]or Fourth Amendment purposes, a motel room is considered a private dwelling where the occupant is legally there, has paid for the room, and has not been asked to leave." Gilbert v. State, 789 So.2d 426, 428 (Fla. 4th DCA 2001); see also United States v. Standridge, 810 F.2d 1034, 1036 (11th Cir.1987); Gnann v. State, 662 So.2d 406, 408 (Fla. 2d DCA 1995). Thus, legal occupants of a motel room are entitled to the strictest Fourth Amendment protections from illegal entry, searches and seizures. Green v. State, 824 So.2d 311, 314 (Fla. 1st DCA 2002) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)); see also Gnann, 662 So.2d at 408; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Sheff v. State, 329 So.2d 270, 272 (Fla.1976); Roundtree v. State, 544 So.2d 1101, 1102 (Fla. 1st DCA 1989); Engle v. State, 391 So.2d 245, 246 (Fla. 5th DCA 1980). In the instant case, the trial court found that Lee was a legal guest in the motel room, because the evidence showed that he had paid rent on the room and a bag containing his clothes and personal items was found in the room.
Warrantless searches or arrests conducted in a constitutionally protected area like a motel room are per se unreasonable unless they fall within one of the five established exceptions to the search warrant requirement. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The five exceptions are for searches (1) with the occupant's consent, (2) incident to lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, or (5) pursuant to a stop and frisk. See Gnann at 407.
In the instant case the trial court found that there was probable cause combined with exigent circumstances, in the form of "[i]ssues relating to officer safety, control over the suspects, control of the rooms in question, destruction of controlled substances, and loss of control over police buy money constituted exigent circumstances justifying entry into the room in question." However, a review of the record reveals that these circumstances did not amount to exigencies, either alone or taken together.
There is no exhaustive list of what constitutes exigent circumstances to permit a warrantless entry of a constitutionally protected space. See Gilbert, 789 So.2d at 428; Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Rather, the reasonableness of an entry by police onto private property without a warrant depends on the totality of the circumstances. See Davis v. State, 834 So.2d 322, 327 (Fla. 5th DCA 2003). Some set of facts must exist that precludes taking the time to secure a warrant. See Levine v. State, 684 So.2d 903, 904 (Fla. 4th DCA 1996).
*1137 Factors indicating exigent circumstances include (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; and (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public. See United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir.), cert. denied, 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987).
The officers in the instant appeal claimed to have been concerned that they might lose control over Dumas and the other suspects. Because Dumas had traveled to the motel in his own vehicle, the officers feared that he might flee in his car, potentially setting off a dangerous high-speed car chase or causing the police simply to lose contact with him if they waited to obtain a warrant. Indeed, the police were allegedly worried about any and all of the then unknown number of suspects potentially leaving during the time it would have taken to secure a warrant.
However, given that there were at least eight or nine officers with four police vehicles on the scene to cover only three suspects plus the informant, these nine officers should have been able to maintain control over the individuals at the motel safely. Any fears that it would not have been possible to control the suspects were not reasonable, given that the suspects were so outnumbered and did not know that police were outside. See, e.g., Graham v. State, 406 So.2d 503, 505 (Fla. 3d DCA 1981) (holding that warrantless arrest of robbery suspect in his motel room three days after robbery had occurred was not justified on theory of exigent circumstances, where eight officers were at scene, greatly reducing risk that defendant would escape); Alvarado v. State, 466 So.2d 335, 337 (Fla. 2d DCA 1985) (holding that no exigent circumstances existed to allow warrantless entry into apartment containing suspect, where four officers were covering the three exits to the apartment, and the officers did not know when the suspect was going to leave).
Moreover, it was mere speculation to assert that a car chase would have ensued if Dumas left in his own vehicle, or even that Dumas would leave imminently. In fact, speculation formed the basis of most of the officers' reasons for foregoing a warrant in this case. Because conjecture does not amount to an objectively reasonable fear that there is no time to secure a warrant, the claim that the officers could not control the suspects did not form a legitimate exigent circumstance sufficient to justify warrantless entry into a constitutionally protected space.
The police also claimed to be concerned about keeping control over the confidential informant, because he had possession of the purchased drugs, and because it was important for the officers to keep track of him for purposes of future prosecution of the suspects. Again, the fact that there were nine officers on the scene substantially undermines the state's argument. The officers outnumbered the suspects and informant more than two-to-one. This calls into question the reasonableness of any concern the police could have had about being able to control or keep track of all the persons involved in the operation, including the informant, during the time it would have taken to get a warrant.
Another reason given for the warrantless search was that it appeared that more than one motel room may have been *1138 involved in the transaction, a situation that police had not anticipated. This suggested to the police that the drug operation was larger than they had expected, and the officers believed that they may not have been able to maintain control over both rooms during the time it would have taken to obtain a search warrant.
However, the officers did not actually know that two rooms were being used; again, it was mere speculation that more than one room was involved. As it turned out, Lee and Curtis occupied only one room that night. They had spent the previous night in one room, then had moved to room 309 the following day.
Neither a lack of knowledge nor sheer speculation or guesswork about the situation at hand translates to exigent circumstances. Police must have a factual basis to forego a warrant and enter a constitutionally protected area; it is not enough that they are uninformed and subjectively afraid the situation may be worse than anticipated. Therefore, the claim that there may have been more than one room involved and that the officers may have been unable to control both rooms was not an exigent circumstance justifying warrantless entry into the room.
Another factor that the trial court found prompted the police to enter the room without a warrant was the concern that evidence would be destroyed or lost before they could secure a warrant. The officers allegedly were concerned that the suspects in the room would be tipped off to their presence and flush the drugs down the toilet if the officers tried to detain anyone coming out of the room. Also, if any of the suspects left the room, the police believed that they may not be able to keep track of the drugs. In order to ensure that they could recover all of the drugs, the police decided to enter the room before anyone left, so as to have all the suspects and evidence in one room.
But the possibility that the drugs might be destroyed was not a valid exigency, because that possibility did not actually exist until the officers knocked on the door and announced their presence. Where the actions of the police themselves cause the imminent destruction of the evidence, warrantless entry into a motel room to seize that evidence is not justified. See Hornblower v. State, 351 So.2d 716 (Fla.1977). The Florida Supreme Court has held that exigent circumstances exist where the occupants of a house are aware of the presence of someone outside, and are engaged in activities that justify the officers in the belief that the occupants are actually trying to escape or destroy evidence. See Benefield v. State, 160 So.2d 706 (Fla. 1964). The facts of the instant case do not rise to this level. Here, the suspects were unaware that police officers were outside the motel, nor were they doing anything at the time that would have reasonably led the officers to believe that they were trying to destroy evidence or escape. See Rebello v. State, 773 So.2d 579 (Fla. 4th DCA 2000); Levine, 684 So.2d at 904; State v. Clarke, 242 So.2d 791 (Fla. 4th DCA 1970); Berryman v. State, 368 So.2d 893 (Fla. 4th DCA 1979); State v. Johnson, 372 So.2d 536 (Fla. 4th DCA 1979) (holding that police may enter without a warrant where the facts show reasonable grounds to fear destruction of the evidence).
Moreover, in order to justify a warrantless entry into a residence to prevent the imminent destruction of evidence, the police must have an objectively reasonable fear that the evidence will be destroyed before a warrant can be obtained. See Burt v. State, 821 So.2d 437, 439 (Fla. 2d DCA 2002); United States v. Rivera, 825 F.2d 152, 156 (7th Cir.1987).
*1139 The facts of the instant case do not show that the officers' fears were objectively reasonable. There was no evidence that any of the three suspects inside the motel room knew that there were police outside, that the informant was wearing a wire and working with police, or that the police intended to arrest the suspects. In addition, as in Burt and Gnann, an officer could have been posted outside the motel room door while the other officers secured a search warrant. The state did not show that there was insufficient time to secure a warrant or that there were any circumstances indicating that the drugs were about to be destroyed. Based on the foregoing, the fear of destruction of the evidence in the instant case was not a valid exigent circumstance to justify entering the room without a warrant.
Nor does the state's assertion that the police were concerned for officer safety qualify as a legitimate exigency under the facts of this case. The state asserts that there is always an issue of officer safety when multiple suspects are present and moving within a public area like a motel room. Also, because drug dealers are generally known to be violent and to use firearms commonly, the state argued that the concern for officer safety was heightened in the instant case. Therefore, had any of the suspects been alerted to the presence of police at the motel, the state maintains that officer safety would have been at great risk, regardless of whether the officers outnumbered the suspects. Further, the state contends that the officers needed to avoid a potential car chase by preventing the suspects from leaving the room or going to their cars, because car chases posed yet another risk to officer safety.
These fears were based on generalizations about drug cases and not on any specific risk presented by the facts of this case. As we have noted, the possibility of a high speed car chase is speculative. There is no evidence to suggest that it was more likely to occur in this case than it would be in any other. Likewise, the fear that the suspects might be dangerous was based on general conclusions about drug dealers and not on any facts or circumstances relating to this case in particular. Although the officers claimed to know that Dumas was a violent criminal, they did not assert that he was doing anything at the time that threatened their safety or the safety of others.
In the instant case, the police were simply dealing with a number of unknowns they had not anticipated in setting up the buy, including how many suspects were in the room, how many people were involved in the operation at the motel, or whether someone might present a threat from another room. They speculated that there could be a large operation at hand, that one or more of the suspects could leave the room, and that, if any of the suspects left in a car, a dangerous high-speed chase might occur. Again, all of these suppositions were mere conjecture, not known fact. Nor did they have any reason to believe that anyone inside the room was in danger. The officers' subjective speculation and the various unknowns did not create an exigent circumstance reasonably compelling entry into the room without a warrant.
The court also found that an exigency was created by the fact that the officers were concerned about keeping track of and recovering the money they had given the informant with which to purchase the drugs. But there was no basis for the police to be so concerned, since they had the motel surrounded, thus minimizing the risk that the informant or any of the suspects could flee with the money. See Alvarado, 466 So.2d at 337 (holding that there were no exigent circumstances *1140 where the police had four men covering three exits to the apartment containing the suspect and officers did not know when the suspect was going to leave).
Finally, the police asserted that officer safety was threatened by the fact that drug dealers often carry guns. But the fact that the officers knew that suspects inside the motel room may have guns is not, in itself, sufficient to justify warrantless entry into the room. They expressed no concern that the suspects were going to shoot either a bystander inside the room or any of the officers. Indeed, they could not argue that the officers were in danger of being shot, as the suspects did not even know that the police were at the motel. Only when the police made their presence known to the suspects by knocking on the door and then breaking it down did the danger of officers being shot arise. This was another exigency created by the police officers' own conduct, so it cannot justify the warrantless entry.
None of the arguments advanced by the state are sufficienteither alone or taken togetherto justify a warrantless entry into a constitutionally protected area. Therefore, we conclude that the motion to suppress should have been granted.
Reversed.
BENTON, PADOVANO and BROWNING, JJ., concur.