TAYLOR, J.
 

 The defendant entered a plea of no contest to trafficking in heroin and possession of drug paraphernalia, reserving the right to appeal the denial of his motion to suppress evidence. He argues that the police officers’ warrantless entry into his home after the arrest of an individual outside his home was unlawful. We agree. Because the trial court erred in denying the defendant’s motion to suppress, we reverse.
 

 At the motion to suppress hearing, Detective Vincent Campos of the Broward Sheriffs Office testified that in July 2008 he was engaged in an on-going narcotics investigation of the defendant, based on complaints that the defendant was selling narcotics. While conducting undercover surveillance, Campos observed a white female, later identified as Alexis Russell, leave the defendant’s residence and make contact with an unknown white male, later identified as Steadham. The officer saw Russell reach into Steadham’s pocket and deposit something, which he believed to be narcotics. After Russell and Steadham parted ways, Campos made contact with Steadham. Steadham admitted that Russell delivered narcotics to him and agreed to fully cooperate with the police. He told the officer that he had contacted the defendant to buy the narcotics and explained that they had a code for drug transactions. Once Steadham learned that he would not be released for a felony charge, however, he refused to cooperate any further.
 

 After Steadham was placed in custody, Campos informed his supervisors about the hand-to-hand drug transaction he witnessed. He told them that Steadham said there were probably more drugs inside the defendant’s home and that the defendant was there with his girlfriend. Campos also told the sergeant about his prior interaction with the defendant in January 2008, when the defendant was arrested for possession of heroin after dropping narcotics to the ground when approached by police at his residence.
 

 Members of Detective Campos’s selective enforcement team continued surveillance on the defendant’s home from unmarked police vehicles. Campos stayed in contact with them by radio. At that time, he did not believe he had probable cause to apply for a search warrant.
 

 Detective Gregory Eglund arrived on the scene to assist the take-down team with the arrest of Alexis Russell, who was believed to be inside the defendant’s home. Eglund was informed about her delivery of heroin and the officers’ plan to wait for her to come out. Russell eventually came out and was arrested outside the defendant’s home, about five feet from the front door. The front door remained open. Eglund said he could tell that there were other people inside because from the front door he could see some movement in the back bedroom. Five officers entered the home with guns drawn and performed a protective sweep. Eglund explained that the protective sweep was “for our well being, making sure nobody was armed,” and that they “went inside and detained the other people that were inside the house.”
 

 Eglund went to the back bedroom, where he found the defendant and the defendant’s girlfriend, Stephanie Scott, sitting on the bed. Containers of what appeared to be heroin were lying next to them. The defendant and Scott were detained and brought outside the house. Eglund did not see the defendant or Scott try to destroy any evidence. They did not resist; they were handcuffed and brought outside, where they remained calm and cooperative.
 

 
 *800
 
 Sergeant Edward Grant testified that both the defendant and Scott were detained and that they were not free to leave. They were read their
 
 Miranda
 
 rights, given BSO consent forms, and advised of their right to refuse consent. After determining that both the defendant and Scott lived in the house, the officers obtained their signed consents to search the home. The defendant’s handcuffs were removed to allow him to sign the consent from. This occurred within ten to fifteen minutes after the protective sweep. The police did not threaten or coerce the defendant and Scott into signing the consent forms. Neither the defendant nor Scott yelled or resisted; the defendant appeared to sign under his own free will. When Scott signed the consent form, however, she gave a false name.
 

 Scott testified that she did not know the police were in the house until they came into the bedroom. She admitted giving a false name on the consent form, because she “didn’t want to have any responsibility to sign anything, you know, because I didn’t want any part of it.” She testified the officers told her if she did not sign the consent to search form, she would face the same charges as the defendant. She said that she signed it because she was a little scared.
 

 After consent was given, the officers reentered the home to conduct a search. Heroin was found in the bedroom on the bed, on the floor, at the foot of the bed, and around the room. Eglund stated that the heroin that they recovered was only what they had seen during the protective sweep, in addition to heroin out in the open on the floor.
 

 Campos, who described the entry into the defendant’s home as a protective sweep, explained that there are safety concerns with narcotics investigations, and that “[t]ypically, with narcotics investigations, there’s an unknown. You don’t know if there’s going to be weapons inside, if there’s going to be booby traps inside. You are walking into, you know, some type of ambush, maybe, you know, and we have to take precautions for ourselves and for the public.... [I]t’s dangerous business. Typically, there’s guns and drugs.” On cross-examination, however, Campos acknowledged that, although he knew there were occupants inside the residence, he did not know whether or not they were armed. He recalled that the defendant did not resist arrest or pose any threat during his arrest in January 2008. Further, he did not remember any weapons being recovered from the defendant’s home at that time. Campos acknowledged that in January 2008 the officers performed a protective sweep of the defendant’s home after his arrest outside the home and afterwards obtained his consent to search in the same way as they did in July 2008.
 

 At the end of the suppression hearing, the defendant argued that the officers had no right to enter his home to conduct a protective sweep since Russell’s arrest occurred outside the home and the officers had no reasonable belief, based on specific and articulable facts, that the home harbored individuals that posed a danger to them. As such, he argued, any consents given after the illegal entry were invalid.
 

 The court denied the motion. It reasoned that because the officers could see from the front door that there were other individuals inside the home, they were authorized to conduct a protective sweep for their safety and to protect them “from the possibility of any type of harm coming to them.” The court further found that the consent given by the defendant’s girlfriend was valid and that the defendant did not have standing to attack her consent.
 

 The defendant ultimately pled no contest to the charges and reserved the right
 
 *801
 
 to appeal the trial court’s ruling on the motion to suppress. He was sentenced concurrently to three years for trafficking in heroin, and 364 days for possession of drug paraphernalia.
 

 The state first argues that the defendant’s motion to suppress was not properly preserved for appeal because, although the defendant indicated at his plea hearing that he intended to appeal the denial of the motion to suppress, the court did not rule, nor did the parties stipulate, that the ruling was dispositive.
 

 Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i) permits a defendant to appeal from a guilty or
 
 nolo contendere
 
 plea when the defendant “expressly reserved the right to appeal a prior disposi-tive order of the lower tribunal, identifying with particularity the point of law being reserved.” “An issue is dispositive only when it is clear that regardless of the outcome of the appeal, there will be no trial.”
 
 Fuller v. State,
 
 748 So.2d 292, 294 (Fla. 4th DCA 1999) (citing
 
 Vaughn v. State,
 
 711 So.2d 64, 65 (Fla. 1st DCA),
 
 rev. denied,
 
 722 So.2d 195 (Fla.1998)). It is the trial court’s duty “to determine the dispos-itive nature of the reserved question.”
 
 Everett v. State,
 
 535 So.2d 667, 669 (Fla. 2d DCA 1988). The court errs if it “merely acknowledges that the defendant has reserved an issue for appellate review.”
 
 Id.
 

 However, “where a motion tests the suppression of contraband which the defendant is charged with possessing, the motion is usually considered dispositive in the case.”
 
 J.J.V. v. State,
 
 17 So.3d 881, 883 (Fla. 4th DCA 2009) (citing
 
 Brown v. State,
 
 376 So.2d 382, 385 (Fla.1979);
 
 Howard v. State,
 
 515 So.2d 346 (Fla. 1st DCA 1987)). “Thus, the lack of an express finding that the issue is dispositive is not fatal.”
 
 Id.
 
 (citing
 
 Hawk v. State,
 
 848 So.2d 475, 478 (Fla. 5th DCA 2003)).
 

 Here, the defendant was charged with trafficking in heroin. The information alleged that the defendant “did then and there unlawfully and knowingly have in his
 
 actual or constructive possession
 
 a controlled substance” contrary to sections 893.135(l)(c)la and 893.03(l)(b)(ll), Florida Statutes. Because the defendant was charged with trafficking through
 
 possession,
 
 the possession cases that hold that the lack of a dispositiveness finding is not fatal apply in this case. We thus find that the issue was properly preserved.
 

 On the merits, the state argues that the trial court correctly denied the motion to suppress because the officers clearly articulated facts, based on the circumstances of this case, which justified a protective sweep of the defendant’s home.
 

 A protective sweep is “ ‘a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others.’ ”
 
 Vasquez v. State,
 
 870 So.2d 26, 30 (Fla. 2d DCA 2003) (quoting
 
 Maryland v. Buie,
 
 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)). It may only extend to those places where a person may be hiding.
 
 Runge v. State,
 
 701 So.2d 1182, 1183 (Fla. 2d DCA 1997) (citing
 
 Buie,
 
 494 U.S. at 335, 110 S.Ct. 1093).
 

 Without extraordinary circumstances, “government agents have no right to search a dwelling when an arrest is effectuated outside it.”
 
 Klosieski v. State,
 
 482 So.2d 448, 450 (Fla. 5th DCA 1986) (citing
 
 Vale v. Louisiana,
 
 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)). The threshold to the entrance of a house “may not reasonably be crossed without a warrant” absent exigent circumstances.
 
 Id.
 
 (citing
 
 Payton v. New York,
 
 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).
 

 
 *802
 
 Regardless of whether the initial arrest is made inside or outside the home, “ ‘police officers have a right to conduct a quick and cursory check of a residence when they have reasonable grounds to believe that there are other persons present inside the residence who might present a security risk.’ ”
 
 Newton v. State,
 
 378 So.2d 297, 299 (Fla. 4th DCA 1979) (quoting
 
 U.S. v. Bowdach,
 
 561 F.2d 1160 (5th Cir.1977)). The officers must have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence.
 
 United States v. Thompson,
 
 No. 08-60264-CR-COHN, 2009 WL 302037, at *1 (S.D.Fla. Feb. 6, 2009). Further, “a protective sweep of the inside of a residence incident to an arrest made outside the residence is not
 
 per se
 
 unlawful, and is proper if the arresting officer has (1) a reasonable belief that third persons are inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public.”
 
 United States v. Flores,
 
 No. 2:08-cr-108-FtM-29SPC, 2009 WL 55022, at *2 (M.D.Fla. Jan.7, 2009) (citing
 
 United States v. Oguns,
 
 921 F.2d 442, 446 (2d Cir.1990)).
 

 In
 
 Klosieski v. State,
 
 482 So.2d 448, 449 (Fla. 5th DCA 1986), the police conducted a protective sweep of the house after the two defendants were arrested and secured outside the home. The fifth district reversed the denial of the motion to suppress, holding that “the police had no reason to believe that other individuals,
 
 dangerous to their safety,
 
 were inside the house....
 
 The fact that the police did not know, as an absolute ceHainty, whether more people were in the house ... cannot justify entry into the house.” Id.
 
 at 450 (emphasis supplied).
 

 Here, the officers had a reasonable belief that third persons were inside. Not only did Steadham tell Campos that the defendant and Scott were in the house, but Eglund testified he saw some movement in the back bedroom. However, no evidence was adduced at the hearing to establish the required “reasonable, articulable suspicion” that these individuals posed a danger and might jeopardize the officers’ safety or destroy evidence. The officers testified only about their general safety concerns with narcotics investigations. Their testimony suggests that they entered the residence as part of a routine practice, rather than on the basis of any articulable facts which would warrant a reasonable belief that the occupants posed a threat to officer safety.
 
 See Mestral v. State,
 
 16 So.3d 1015, 1018 (Fla. 3d DCA 2009) (holding that a protective sweep of the defendant’s home was impermissible where no exigent circumstances existed).
 

 Moreover, exigent circumstances did not exist to support a warrant-less entry to search the defendant’s house. Warrantless searches are considered, under the Fourth Amendment, per se unreasonable, subject to certain exceptions.
 
 Hornblower v. State,
 
 351 So.2d 716, 717 (Fla.1977) (citing
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The state bears the burden to demonstrate that “procurement of a warrant was not feasible because ‘the exigencies of the situation made that course imperative.’ ”
 
 Id.
 
 (citing
 
 McDonald v. United States,
 
 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948)). Even if they have probable cause, “police officers may not enter a dwelling without a warrant, absent consent or exigent circumstances.”
 
 Levine v. State,
 
 684 So.2d 903, 904 (Fla. 4th DCA 1996) (citing
 
 Payton v. New York,
 
 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). The measure of rea
 
 *803
 
 sonableness is totality of the circumstances.
 
 Wright v. State,
 
 1 So.3d 409, 412 (Fla. 2d DCA 2009) (citing
 
 Lee v. State,
 
 856 So.2d 1133, 1136 (Fla. 1st DCA 2003)).
 

 The state must prove that the police lacked sufficient time to obtain a warrant; “if time to get a warrant exists, [then] the enforcement agency must use that time to obtain the warrant.”
 
 Hornblower,
 
 351 So.2d at 718. The Florida Supreme Court explained that “[l]aw enforcement officers may not sit and wait ... (when they could be seeking a warrant), then utilize their self-imposed delay to create exigent circumstances.”
 
 Id.
 
 at 719. In this case, the state failed to present evidence of any exigent circumstances that would have made procurement of a warrant not feasible. Campos had sufficient probable cause to apply for a search warrant, based on his observations of the hand-to-hand transaction, Steadham’s statements and admissions, and the defendant’s arrest for heroin possession six months earlier. Yet, rather than obtain a warrant, the police continued surveillance, waited for Russell to re-emerge from the house, and then arrested her just a few feet from the front door. The state failed to establish that sufficient time did not exist during this interim to procure a search warrant. In
 
 Hornblower,
 
 the court held that forty-five minutes was an unreasonable length of time and that the warrantless search was unjustified. State
 
 v. Moyer,
 
 394 So.2d 433, 435 (Fla. 2d DCA 1980) (citing
 
 Hornblower,
 
 351 So.2d at 717, and
 
 Wilson v. State,
 
 363 So.2d 1146 (Fla. 2d DCA 1978)) (stating “[t]he courts held that 45 minutes in
 
 Homblower
 
 and six hours in
 
 Wilson
 
 were unreasonable lengths of time and thus the warrantless searches were unjustified”).
 

 Further, the state presented no evidence that the defendant or Scott knew of the police presence outside their home or that the officers perceived them doing anything to indicate that they were attempting to destroy evidence or to escape.
 
 See Gilbert v. State,
 
 789 So.2d 426, 428 (Fla. 4th DCA 2001) (explaining an exigent circumstance includes “where the possessor of contraband is aware that the police are on his or her trail”). In
 
 Lee v. State,
 
 856 So.2d 1133, 1138 (Fla. 1st DCA 2003), the court explained that “in order to justify a war-rantless entry into a residence to prevent the imminent destruction of evidence, the police must have an
 
 objectively reasonable
 
 fear that the evidence will be destroyed before a warrant can be obtained.” The Florida Supreme Court in
 
 Benefield v. State,
 
 160 So.2d 706 (Fla.1964), also held that “exigent circumstances exist where the occupants of the house are
 
 aware
 
 of the presence of someone outside,
 
 and are engaged in activities
 
 that justify the officers in the belief that the occupants
 
 are actually trying to escape or destroy evidence.” Lee,
 
 856 So.2d at 1138 (citing
 
 Benefield,
 
 160 So.2d 706). Fears based on generalizations about drugs and guns are not enough to create an exigent circumstance.
 
 Id.
 
 at 1139-40.
 

 In
 
 Rebello v. State,
 
 773 So.2d 579, 579-80 (Fla. 4th DCA 2000), the defendant was supplying cocaine from his motel room. When an officer knocked on his door and announced he was a police officer, the defendant ran to the bathroom. The officer could hear the toilet flushing and the shower running, so he kicked in the door.
 
 Id.
 
 at 580. We reversed the trial court’s denial of the defendant’s motion to suppress, concluding that the officer’s actions triggered the excitement that led to insufficient time to obtain a warrant.
 
 Id.
 
 at 581. The police “may not create exigent circumstances by their own conduct.”
 
 Id.
 
 at 580 (citing
 
 Levine,
 
 684 So.2d at 904).
 

 Because the police were not justified in entering the defendant’s house
 
 *804
 
 without a warrant and conducting a protective sweep, the consents to search given by the defendant and Scott were invalid. It is well-settled law that “where ... a ‘consent [to search] is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search.’ ”
 
 Gonzalez v. State,
 
 578 So.2d 729, 734 (Fla. 3d DCA 1991) (quoting
 
 Norman v. State,
 
 379 So.2d 643, 646-47 (Fla.1980)). We explained that “ ‘[c]onsent given after police conduct determined to be illegal is presumptively tainted and deemed involuntary, unless the state proves by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint.’ ”
 
 Navamuel v. State,
 
 12 So.3d 1283, 1286 (Fla. 4th DCA 2009) (quoting
 
 Delorenzo v. State,
 
 921 So.2d 873, 879 (Fla. 4th DCA 2006)). Here, the state failed to prove that the taint of illegal entry was dissipated by subsequent events.
 
 See State v. Sakezeles,
 
 778 So.2d 432, 434 (Fla. 3d DCA 2001) (the state bears the burden to show that the taint of illegal entry was dissipated by subsequent events).
 

 Accordingly, we reverse the denial of the defendant’s motion to suppress and reverse and remand for further proceedings.
 

 CIKLIN, J. and BLANC, PETER D., Associate Judge, concur.