WARNER, J.
This appeal arises out of the trial court’s refusal to suppress evidence that was discovered during a warrantless search of *411 appellant’s home. At issue in this appeal is the validity of his father’s consent to the search, which was obtained after appellant was taken into custody outside the home and the officers performed a protective sweep of the home. We hold that the protective sweep violated the Fourth Amendment and tainted the father’s subsequent consent to search.
Appellant was on probation in two underlying cases.[1] While on probation, the police conducted a controlled drug buy from appellant. Detective Brown of the Broward Sheriffs Office testified that he and Detective Hodgson made a controlled call to appellant to purchase “Roxies.” The officers sent a “source” to meet with appellant near appellant’s house. The operation occurred at about 4:00 p.m.
Detective Rush observed the transaction, while Detectives Brown and Hodgson were hiding. When Detective Rush gave the signal that the transaction was “going down,” Brown and Hodgson approached appellant. Appellant tried to walk away and threw some tablets on the ground as Detective Brown was approaching him. Detective Rush found five oxycodone pills in the grass near appellant. The officers then placed appellant in custody and had him sit on the street curb.
Because their surveillance was compromised, the officers performed a “security sweep” of the house where appellant lived with his father and his stepmother. Detective Brown admitted that during the security sweep, he ordered appellant’s father and stepmother out of the house and to remain out of the house. The protective sweep took less than five minutes. The officers looked through any areas where a person could be hiding. When asked why the officers decided to clear the house, Detective Brown responded that it was because they were concerned about officer safety and contraband in the house. No further details were offered.
After clearing the house, the officers went outside and met with the father and stepmother. According to Detective Brown, the officers explained to the parents what happened with appellant. The officers further explained that they had some concerns that there was more contraband inside of the house. The parents said there was nothing inside the house and that the officers were welcome to check. The officers waited about twenty minutes for another officer to arrive with a Consent to Search form. During this time, the parents did not express to the officers that they did not want the officers to search the house. The officers did not threaten the parents. Detective Brown denied telling the parents that they would be arrested if the police were not allowed inside the house.
Appellant’s father signed the Consent to Search form, which was admitted into evidence without objection. The form advised the father of the right to refuse permission to search. According to Detective Brown, appellant’s father was friendly, cordial, and “more than willing” to let the officers go through the house. Brown testified that obtaining a search warrant was “never an issue” because the officers had probable cause. Brown stated that even though the officers were invited in the house, they had a probable cause affidavit if the father did not allow them inside, “but it did not come to that.”
*412 Once the form was signed, the officers entered and appellant’s father accompanied them through the house. The father took them to appellant’s bedroom, where the officers found a pipe containing “Roxie” residue, multiple tablets of narcotics, and $900 in cash. After the search was over, the parents thanked the officers. The testimony of the other officers was consistent with Detective Brown’s recitation of the events.
Not surprisingly, the parents’ testimony presented a drastically different version of events with respect to the detectives’ conduct in obtaining the father’s signature on the Consent to Search form. The father and stepmother both testified that the officers ordered them out of the house and then threatened them with arrest if the officers had to wait for a search warrant and then found drugs in the home. Being a commercial airline pilot whose career would have been threatened by an arrest, the father felt coerced into signing the consent. The father stated that he did not thank the officers and expressed no knowledge of his son’s drug activity.
After considering the parties’ arguments, the trial court first found that there was probable cause to take appellant into custody. With respect to the search of the parents’ home, the trial court found that the officers received voluntary consent for the search. The trial court specifically found as follows: “I find that the officers were credible. There was no coercion. They received consent voluntarily.” Accordingly, the trial court denied the motion to suppress.
Following the denial of the motion to suppress, the parties reached a negotiated plea agreement in all cases. Under the plea agreement, appellant’s probation was revoked and he was sentenced to concurrent three-year terms of imprisonment for all offenses, but he reserved the right to appeal the denial of the motion to suppress. This appeal follows.
In this appeal, appellant does not raise any argument challenging the seizure of the pills found near his person, but rather challenges the trial court’s refusal to suppress the evidence found inside his parents’ home. Relying primarily on Vasquez v. State, 870 So.2d 26 (Fla. 2d DCA 2003) and Diaz v. State, 34 So.3d 797 (Fla. 4th DCA 2010), appellant argues that the officers illegally entered his house to make the initial sweep, his parents were illegally ordered out of the house and detained, and his father’s subsequent consent to the search was the fruit of an illegal entry. The state responds that the initial sweep of the house was not illegal and did not invalidate appellant’s father’s signed consent to search the house. More specifically, the state argues that the limited and brief sweep of the home was based on the exigent circumstances of preventing the destruction of evidence — drugs which could have been disposed of easily and quickly.
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996). An appellate court is bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence. Pagan v. State, 830 So.2d 792, 806 (Fla.2002); Hunter v. State, 32 So.3d 170, 173 (Fla. 4th DCA 2010). However, an appellate court applies a de novo standard of review to the mixed questions of law and fact that ultimately determine constitutional issues. See Schoenwetter v. State, 931 So.2d 857, *413 866 (Fla.2006); Falls v. State, 953 So.2d 627, 629 (Fla. 4th DCA 2007).
At the core of the Fourth Amendment stands “the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.” Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Accordingly, a private home is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment. Ruiz v. State, 50 So.3d 1229, 1231 (Fla. 4th DCA 2011). Indeed, physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Absent consent or exigent circumstances, police officers may not enter a dwelling without a warrant. Rebello v. State, 773 So.2d 579, 580 (Fla. 4th DCA 2000).
A protective sweep is a “quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.” Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Where a defendant is arrested outside his or her home, a warrantless protective sweep of the defendant’s home is permissible only if the officers have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence. See Diaz v. State, 34 So.3d 797, 802 (Fla. 4th DCA 2010); see also Klosieski v. State, 482 So.2d 448, 450 (Fla. 5th DCA 1986) (holding that warrant-less entry of house to conduct a protective sweep was not justified where suspects were arrested outside the house and “the police had no reason to believe that other individuals, dangerous to their safety, were inside the house”).
A protective sweep of a home, incident to an arrest outside the home, cannot be justified routinely. See Mestral v. State, 16 So.3d 1015, 1018 (Fla. 3d DCA 2009) (holding that a protective sweep was impermissible because “the officers entered the residence as part of a routine practice and not on the basis of any articu-lable facts which would warrant a reasonable belief that there was any dangerous individual inside who posed a threat to those on the arrest scene”). The arresting officer must have both “ ‘(1) a reasonable belief that third persons are inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public.’ ” Diaz, 34 So.3d at 802 (quoting United States v. Flores, 2009 WL 55022, at *2 (M.D.Fla. Jan.7, 2009)).
Similarly, “exigent circumstances exist where the occupants of a house are aware of the presence of someone outside, and are engaged in activities that justify the officers in the belief that the occupants are actually trying to escape or destroy evidence.” Lee v. State, 856 So.2d 1133, 1138 (Fla. 1st DCA 2003) (citing Benefield v. State, 160 So.2d 706 (Fla.1964)) (emphasis in original). Fears for officer safety based on generalizations about drug cases, rather than on any specific risk presented by the facts of defendant’s case, do not qualify as exigent circumstances. Lee, 856 So.2d at 1139-40.
Two cases illustrate under similar facts that the protective sweep conducted in this case violated the Fourth Amendment. In Vasquez v. State, 870 So.2d 26 (Fla. 2d DCA 2003), the Second District held that a search of a motel room was not a permissible protective sweep, nor was it justified by exigent circumstances. There, the police were investigating a robbery and encountered the defendant outside his motel *414 room. As the officers approached the room where the defendant claimed he resided, the co-defendant suddenly opened the door and stepped outside, leaving the door open behind him. From the hallway, the officers observed in the room a full syringe, a pipe intended for drug use, and a bullet inside the room. The officers then secured the defendants outside their motel room, entered the room, and performed a “protective sweep.” During this entry, an officer observed bandanas, cash, and other evidence related to the robbery. The defendant later signed a form consenting to a full search of the motel room, and also gave a statement implicating himself in the crime.
The trial court denied the defendant’s motion to suppress the evidence, but the Second District reversed. Relying on Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the court determined that the officers could not justify a protective sweep of the motel residence based upon the arrest of the occupants outside the home. No exigent circumstances were present, nor could “ ‘an arrest on the street ... provide its own ‘exigent circumstance’ so as to justify a warrantless search of the arrestee’s house.’ ” 870 So.2d at 30 (quoting Vale, 399 U.S. at 35, 90 S.Ct. 1969). The Vasquez court stressed that the officers lacked a reasonable basis to suspect that a third person was inside the room, and thus concluded that there were no exigent circumstances and that the “protective sweep” was an unlawful search. 870 So.2d at 29-31. The court also noted that because the protective sweep was illegal, the consent to the search and the confession obtained thereafter were presumed invalid. Id. at 31. However, the Vasquez court did not direct that the trial court suppress the evidence, but instead remanded the case for the trial court to consider whether there was an unequivocal break in the chain of illegality resulting from the protective sweep. Id. at 31-32.
More recently, in Diaz v. State, 34 So.3d 797 (Fla. 4th DCA 2010), this court held that the police were not justified in entering the defendant’s house without a warrant and conducting a protective sweep. There, the defendant, Diaz, was a known drug dealer, and the police were watching his home. A detective saw a female leave the defendant’s house and deposit suspected narcotics into the pocket of an unknown male, later identified as Steadham. Stead-ham was detained and implicated the defendant as his drug source. Steadham also told the police that there were probably more drugs inside the defendant’s home and that the defendant was there with his girlfriend. The female then came out of the home again and was arrested a few feet from the front door, which remained open. An officer could tell there were other people inside the house, based on movement in the back. Five officers then entered the home with guns drawn and performed a protective sweep. An officer testified that the protective sweep was for officer well-being and to make sure nobody was armed. The officers detained Diaz and his girlfriend, bringing them outside where they signed consents to search the home. Diaz, 34 So.3d at 799-800.
Diaz moved to suppress the contraband found in his home, arguing that the protective sweep was illegal and the consents to search were invalid. The trial court denied the motion. On appeal, this court reversed, concluding that the police were not justified in entering the defendant’s house without a warrant and conducting a protective sweep. Id. at 801-04. We explained:
[N]o evidence was adduced at the hearing to establish the required “reasonable, articulable suspicion” that these in *415 dividuals posed a danger and might jeopardize the officers’ safety or destroy evidence. The officers testified only about their general safety concerns with narcotics investigations. Their testimony suggests that they entered the residence as part of a routine practice, rather than on the basis of any articulable facts which would warrant a reasonable belief that the occupants posed a threat to officer safety.
Id. at 802. We further found that the state failed to present evidence of any exigent circumstances that would have made procurement of a warrant not feasible. Id. at 803. Finally, because the state failed to prove that the taint of the illegal protective sweep was dissipated by subsequent events, this court held that the consents to the search given by both Diaz and his girlfriend were invalid, and reversed the denial of Diaz’s motion to suppress. Id. at 803-04.
Applying these principles to the facts of this case, it is clear that the war-rantless entry and protective sweep of the Rozzo home violated the Fourth Amendment. Appellant was arrested outside his home. Unlike both Vasquez and Diaz, the officers observed no open door to the home and no illegal activity within. Detective Brown admitted in his testimony that he ordered the parents out of the house so that the police could conduct a protective sweep of the home. No reasonable person would feel free to simply terminate an encounter with the police after having been ordered out of his or her home.
Like Diaz, the officers’ testimony in this case suggested that they conducted the sweep as a routine practice out of generalized concerns regarding officer safety and the possible presence of contraband, not based on any articulable facts relevant to this particular case. Moreover, just as in Diaz, in this case the officers did not have any objectively reasonable basis to suspect that the occupants of the house were aware that appellant had been arrested outside the home, nor did the officers have an objectively reasonable basis for believing that the occupants of the house posed a safety threat or were actively trying to destroy evidence. Furthermore, the facts here present an even more compelling case for suppression than in Diaz, because in Diaz the police knew that a suspected drug dealer was inside the home. Here, the occupants of appellant’s home were his parents, and there was no testimony that anyone suspected appellant’s parents of being involved in his drug-related activities. The state failed to present evidence of any exigent circumstances that would have made applying for a warrant impractical.
The officers’ own testimony, which the trial court found credible, establishes the illegality of the protective sweep. Because the “protective sweep” was an unreasonable warrantless entry into the Rozzo home, the father’s subsequent consent to the search of the home was presumptively tainted.[2] See Gonzalez, 578 So.2d at 734 (unlawful police action presumptively taints and renders involuntary any consent to search). The state bears *416 the burden to show that the taint of illegal entry was dissipated by subsequent events. State v. Sakezeles, 778 So.2d 432, 434 (Fla. 3d DCA 2001). Here, only about twenty minutes elapsed between the initial sweep and the time when the written consent form was signed. The consent to search was nothing more than an acquiescence to a show of authority after the officers had ordered the parents out of the house to conduct a protective sweep.
The state argues, however, that the taint was dissipated because the father was advised that he had a right to refuse the search, citing State v. Boyd, 615 So.2d 786 (Fla. 2d DCA 1993). In Boyd, the Second District stated, in dicta,[3] that “even where a consent is obtained after the taint of illegal police action, the taint may be dissipated by advice to the defendant of his right to refuse to consent so as to render the subsequent consent free and voluntary.” Id. at 790. However, the operative words in Boyd are “may be.” Knowledge of the right to refuse the search is simply one relevant factor in determining whether consent is voluntary. See State v. Gamez, 34 So.3d 245, 248 (Fla. 2d DCA 2010) (although knowledge of the right to refuse the search is a relevant factor in determining whether consent is voluntary, courts must look at the totality of the circumstances). This fact is not dispositive under the totality of the circumstances. For example, in Diaz, following the protective sweep, the defendant and his girlfriend were also advised of their right to refuse consent to the search, yet this court still held that the state failed to prove that the taint of illegal entry was dissipated. See Diaz, 34 So.3d at 800, 804. Likewise, in Gonzalez v. State, 578 So.2d 729 (Fla. 3d DCA 1991), the Third District found that the taint of an illegal protective sweep had not been dissipated even though the written consent form advised the signee of the right to refuse the search, where there was no showing that the written advice was ever read to the person who signed the form. Gonzalez, 578 So.2d at 737 n. 19. Here, the mere fact that the written consent form advised the father of the right to refuse the search is insufficient to dissipate the taint of the illegal sweep.
Because the state failed to dissipate the taint of the illegal protective sweep, we hold that the trial court erred in refusing to suppress the evidence inside the Rozzo home. However, appellant does not raise any argument on appeal that the trial court erred in refusing to suppress the five oxycodone pills that were found near appellant when he was arrested. Accordingly, on remand we direct the trial court to vacate appellant’s convictions and sentences in case number 09-8058 as to count I (trafficking in hydrocodone), count III (possession of hydromorphone), and count IV (possession of drug paraphernalia). Appellant’s conviction as to count II (possession of oxycodone) should stand.
As to cases 06-11491 and 07-8942, on which the trial court violated appellant’s probation, we direct the trial court to enter amended orders of revocation of probation, revoking only for possession of oxycodone, but vacating the remaining allegations of violation of probation.

Reversed and remanded with instructions.

POLEN and LEVINE, JJ., concur.

. In case number 06-11491, appellant was placed on probation following a no contest plea to charges of possession of cannabis, possession of paraphernalia, and violating a driver’s license restriction. In case number 07-8942, appellant was placed on probation following a no contest plea to charges of burglary of a conveyance, petit theft, and felony battery.

. Because the trial court found the officers credible, we need not consider the father’s testimony of additional coercive conduct on the part of the Broward Sheriff’s Department in obtaining his written consent to the search. Nevertheless, we note the similarity of the circumstances between Diaz and this case, both involving the Broward County Sheriff’s office.. In each case, the person whose consent to search was sought, i.e., the girlfriend in Diaz and the parents in this case, testified that the officers told them that they would be arrested if the officers were required to get a search warrant and subsequently found contraband in the residence.

. This statement in Boyd is dicta because the court there stressed that the initial entry was not illegal.