DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES SEARCY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2201

[November 20, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Edward H. Merrigan, Jr., Judge; L.T. Case No. 15-007019 CF10A.

Carey Haughwout, Public Defender, and Stacey Kime, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rhonda Giger, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

In his motion to suppress evidence, Charles Searcy argued that (1) law enforcement officers did not have grounds to conduct a protective sweep of his home and (2) that the subsequent consent to search given by another resident of the home, his mother, was thus invalid. We must reverse and remand for the trial court to make factual findings so this court can engage in meaningful appellate review.

During the hearing on Searcy's pivotal motion, a law enforcement officer gave an account of events which starkly differed from the version of events offered by the defense, which included sworn testimony from Searcy's mother. The detective testified that after Searcy was arrested outside his home for sale of drugs, officers conducted a protective sweep to ensure there were no other people in the home. The detective indicated they were also concerned that someone remaining in the home might "destroy the drugs." Shortly after the sweep concluded, the detective testified, Searcy's mother arrived home. The detective testified that he and his fellow officers invited her to go into the house and confirm the presence

of contraband; that she obliged; and that she then gave consent for the officers to search the home she shared with Searcy and her daughter.

Meanwhile, Searcy's mother offered vastly different testimony. She testified that during a family meal, Searcy stepped outside of the home. The mother then looked out through her window and saw that Searcy was being detained by a group of officers who were wearing military-type fatigues and carrying weapons. Searcy's mother testified that after she then exited the home, the SWAT team barred her from reentering it; removed her daughter from the home; and obtained a written consent from the mother while they ransacked her home with the assistance of a police canine.

The trial court summarily denied the motion without making any factual findings or providing any rationale for its oral pronouncement.

Given the diametrically opposed testimony offered by the state and the defendant, we find it impossible to discern the grounds for the trial court's denial. To the extent the trial court accepted the state's argument that, based on the officer's testimony, the protective sweep was legal, the court erred, as the officer's testimony did not indicate that circumstances existed supporting a protective sweep. *See Diaz v. State*, 34 So. 3d 797, 802 (Fla. 4th DCA 2010) (recognizing that officers may conduct a protective sweep when they "have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence"). Rather, it appears to us that the officer's testimony established that the sweep was based on the sort of generalized concerns that are insufficient to support a protective sweep of a home. *See Rozzo v. State*, 75 So. 3d 409, 415 (Fla. 4th DCA 2011).

And if it was established that the protective sweep was illegal, then "the unlawful police action presumptively taints and renders involuntary any consent to search." *Diaz*, 34 So. 3d at 804 (quoting *Gonzalez v. State*, 578 So. 2d 729, 734 (Fla. 3d DCA 1991)). When there is such a taint, the state has the burden to prove "by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint." *Id.* (quoting *Navamuel v. State*, 12 So. 3d 1283, 1286 (Fla. 4th DCA 2009)). Without factual findings, we cannot ascertain whether the trial court considered this issue. It may have simply ended its analysis by accepting the officer's testimony and finding that the protective sweep was legal. Or the trial court may have recognized that the protective sweep was illegal, but found that by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint. We simply cannot tell.

2

It is the trial court's responsibility, as fact finder, "to assess witness credibility and to determine what happened in this case." *State v. Shaw*, 784 So. 2d 529, 533 (Fla. 1st DCA 2001). It is exceedingly helpful when trial judges "indicate [their] rationale," so that the reviewing court can determine whether the trial court's application of the law to the facts was erroneous. *See State v. Moore*, 791 So. 2d 1246, 1250 (Fla. 1st DCA 2001).

While not an independent ground for reversal, unexplained rulings are generally anathema to a sound appellate opinion. While we decline to enunciate a ruling that would require factual findings following hearings on motions to suppress, we implore trial judges to consider such a routine procedure, whether they be written or orally pronounced.

"Ordinarily, when reviewing a ruling on a motion to suppress, an appellate court presumes the trial court's findings of fact are correct and reverses only those findings not supported by competent substantial evidence. Additionally, the trial court's findings of law are reviewed de novo." *Black v. State*, 59 So. 3d 340, 344 (Fla. 4th DCA 2011) (internal citations and quotation marks omitted). It is with that backdrop that we take this opportunity to encourage trial courts to exercise the prerogative to explain their adjudications and not cede that responsibility to a reviewing court. De novo review of unexplained rulings do not efficiently resolve this issue because the trial court is still in the best position to judge the credibility and demeanor of the witnesses at a pretrial suppression hearing.

Based on the foregoing, we reverse and remand for the trial court to provide a rationale for its ruling and to make necessary factual findings. If the trial court is unable to do so because of the passage of time, it may hold another evidentiary hearing.

*Reversed and remanded with directions.*

DAMOORGIAN and GERBER, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**

3