# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

STATE OF FLORIDA,

Appellant,

v.

AVEON TRE HARRIS,

Appellee.

No. 2D2023-1430

October 16, 2024

Appeal from the Circuit Court for Pinellas County; Chris Helinger, Judge.

Ashley Moody, Attorney General, Tallahassee, and Lydon Schultz Assistant Attorney General, Tampa, for Appellant.

Leslie M. Sammis of Sammis Law Firm, P.A., Tampa, for Appellee.

NORTHCUTT, Judge.

Aveon Tre Harris was the driver of a vehicle involved in a fatal accident, for which he has been criminally charged. Here, the State appeals a pretrial order suppressing the results of a blood alcohol test performed on blood drawn from Harris without a warrant at the scene of the accident.[1] We affirm.

---

[1] Florida Rule of Appellate Procedure 9.140(c)(1)(B) authorizes the State to appeal an order "suppressing before trial confessions, admissions, or evidence obtained by search and seizure."

The suppression hearing evidence reflected the following sequence. The accident occurred at 5:56 p.m., and officers and emergency medical personnel arrived in short order. A DUI officer showed up at 7:20 p.m. and performed field sobriety tests on Harris. He arrested Harris an hour later, at 8:23 p.m. Eleven minutes later, without Harris's consent or a warrant, the DUI officer directed the medical personnel to draw a sample of Harris's blood. The officer eventually did obtain a warrant, which arrived at the scene at 9:06 p.m. Over an hour afterward, at 10:12 p.m., the DUI officer ordered a second blood draw, which was taken from Harris pursuant to the warrant.

Harris was charged with one count of DUI manslaughter and one count of vehicular manslaughter. He filed a pretrial motion to suppress the test results from the initial, warrantless, blood draw on the grounds that it violated his Fourth Amendment right against illegal searches and seizures and his privacy right under the Florida Constitution.

The State argued at the suppression hearing, and it maintains on appeal, that the challenged blood draw results fell within both the exigent circumstances and inevitable discovery exceptions to the rule excluding evidence obtained without a warrant. The circuit court held that neither exception applied, and we agree.

Circumstances may justify a warrantless search when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 569 U.S. 141, 148–49 (2013) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)). However, the State must prove why it was not feasible to procure a warrant under the circumstances of a particular case. *See Diaz v. State*, 34 So. 3d 797, 802 (Fla. 4th DCA 2010).

Here, the State argued that the DUI officer's delay in coming to the scene and in securing a warrant, along with the fact that blood alcohol content dissipates as the suspect's body metabolizes the alcohol, created an exigency that justified the warrantless blood draw. But officers may not create exigent circumstances by their own conduct. *See Hornblower v. State*, 351 So. 2d 716, 719 (Fla. 1977); *Dusan v. State*, 323 So. 3d 239, 242 (Fla. 5th DCA 2021); *Levine v. State*, 684 So. 2d 903, 904 (Fla. 4th DCA 1996); *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991). Moreover, in DUI cases the dissipation of blood alcohol levels alone is not a legally cognizable exigency. *See McNeely*, 569 U.S. 141 at 156. There must be more, as the Supreme Court explained in *Mitchell v. Wisconsin*, 588 U.S. 840, 854 (2019). There, it held that exigency exists only when blood alcohol evidence is dissipating *and* "some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Id.*

In Harris's case, law enforcement ordered the initial blood draw without waiting for a warrant even though the record shows they could have sought the warrant either electronically or by telephone from the scene, there was a judge on call, and the judge who ultimately issued the warrant lived nearby. Indeed, the judge returned the signed warrant a mere twenty-one minutes after law enforcement finally submitted the application. Most important, the State failed to show—or even posit— that the delay in securing the warrant stemmed from some pressing health, safety, or law enforcement need that reasonably took priority over making a timely warrant application. As such, no exigency justified the warrantless blood draw.

The State's second position diametrically contradicts its first. Notwithstanding its assertion that the police were forced to obtain the

3

warrantless blood draw because Harris's blood alcohol level was dissipating, the State also contends that the resulting test reading is admissible in evidence because it would have been inevitably discovered. This argument, too, is unavailing.

Evidence seized illegally may be admissible nonetheless if the seizure was made during an ongoing investigation and "the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix v. Williams*, 467 U.S. 431, 447 (1984); *see also Maulden v. State*, 617 So. 2d 298, 301 (Fla. 1993).

The State contends that the inevitable discovery principle applies to blood alcohol evidence derived from warrantless blood draws, citing *Fitzpatrick v. State*, 900 So. 2d 495, 514 (Fla. 2005), *abrogated on other grounds by Alahad v. State*, 362 So. 3d 190 (Fla. 2023). Notably, the Fifth District has relied on *Fitzpatrick* for the same proposition. *See Campbell v. State*, 288 So. 3d 739, 744 (Fla. 5th DCA 2019).

Both the State and *Campbell* are mistaken. To be sure, *Fitzpatrick* involved a blood draw, but it was not a blood alcohol case. Rather, it dealt with alleged law enforcement misconduct in coercing the defendant to submit to a blood draw for purposes of collecting his DNA. *See Fitzpatrick*, 900 So. 2d at 514. The court concluded that even if the DNA evidence had been illegally obtained, it was admissible because the defendant's DNA inevitably would have been discovered by lawful means during the investigation. *See id.*

There is a glaring difference between DNA evidence and blood alcohol evidence when assessing whether the inevitable discovery exception applies. DNA does not change with the passage of time. Indeed, this immutable quality is critical to its probative value. On the

4

other hand, blood alcohol levels are transitory. *See Mitchell*, 588 U.S. at 847 (referring to the "fleeting quality" of blood alcohol evidence). As the State has acknowledged, blood alcohol varies after a suspect ceases drinking, and it dissipates over time; a delay in testing necessarily diminishes the probative value of the results. *See McNeely*, 569 U.S. at 153. For this reason, unlike the case with DNA, the *time* that the suspect's blood sample was taken bears heavily on the probative value of the resulting blood alcohol evidence. And, unlike the case with DNA, a suspect's blood alcohol level at a given point in time cannot be replicated by testing a subsequent blood draw. Were it otherwise, the second blood draw taken from Harris via the warrant would have mooted the question of whether the results of the first, warrantless blood draw were admissible.

The State's pursuit of the instant appeal tacitly confirms that the question is not moot. The State's and *Campbell*'s misapprehension aside, *Fitzpatrick's* application of the inevitable discovery principle to DNA evidence has no bearing on the ill-gotten blood alcohol evidence in this case.

In sum, the State failed to prove that the results of the warrantless blood draw are admissible under either the exigent circumstances or inevitable discovery exceptions. The trial court properly granted Harris's motion to suppress.

Affirmed.

SLEET, C.J., and LUCAS, J., Concur.

———————————————————

Opinion subject to revision prior to official publication.

5