# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3747

_____

United States of America,        *
                                *

        Appellee,        *

                                * Appeal from the United States

    v.                          * District Court for the District

                                * of Nebraska.

Todd J. DeBuse,           *

                                *

        Appellant.      *

_____

Submitted:  May 14, 2002

Filed:  May 20, 2002

_____

Before McMILLIAN, FAGG, and MELLOY, Circuit Judges.

_____

FAGG, Circuit Judge.

Todd J. DeBuse violated a domestic abuse protection order by contacting his former wife. On August 9, 2000, officers received notice of a warrant to arrest DeBuse for violating the order. Along with the warrant, the officers received a facsimile stating DeBuse had a history of assault on a police officer and resisting arrest, was a possible suspect in an armed robbery, and might have about "twelve shotguns and two rifles and a semiautomatic rifle with magazine and bayonet, possibly an AK-47," in his house. Four officers went to DeBuse's home to arrest him. After DeBuse answered the door and identified himself, one of the officers informed him of the arrest warrant and handcuffed him outside. DeBuse, who was

barefoot, asked to reenter his house to get his shoes, socks, keys, and wallet. As three of the officers escorted DeBuse inside, they saw a rifle hanging on the wall in plain view. In less than five minutes, the officers conducted a protective sweep of the first level of the house and saw many other rifles in plain sight. After leaving the premises, the officers checked with the Bureau of Alcohol, Tobacco, and Firearms (ATF) and learned DeBuse is a felon who cannot legally possess guns. About four hours after DeBuse's arrest, the officers obtained a warrant to search DeBuse's house and returned to execute it. Although the officers knew DeBuse was not home, they knocked and announced their presence before entering DeBuse's unoccupied house and seizing the weapons.

The Government later charged DeBuse with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After the district court[*] denied DeBuse's motion to suppress, DeBuse conditionally pleaded guilty. At sentencing, DeBuse sought downward departures from the otherwise applicable guidelines range under U.S.S.G. § 5K2.0 (permitting departure for mitigating circumstance of kind or degree not adequately taken into consideration by guidelines) and § 5K2.11 (permitting departure for conduct that does not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense). Because DeBuse had possessed the firearms for hunting and target practice, the district court departed downward from the otherwise applicable guidelines range of 57-71 months and sentenced DeBuse to thirty-seven months in prison. On appeal, DeBuse does not challenge his arrest, but contests the searches of his home and his sentence.

DeBuse argues the first search of his residence violated the Fourth Amendment. Ordinarily, the arrest of a person outside of a residence does not justify a warrantless search of the residence itself. See Chimel v. California, 395 U.S. 752,

---

[*]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

763 (1969). One of the exceptions to this rule, however, is when an officer accompanies the arrestee into his residence to obtain clothing or identification. Washington v. Chrisman, 455 U.S. 1, 7 (1982); United States v. Apker, 705 F.2d 293, 306 (8th Cir. 1983); see also United States v. Gwinn, 219 F.3d 326, 333 (4th Cir. 2000) (without arrestee's request, arrestee's partially clothed status may constitute exigency justifying officer's temporary reentry into arrestee's home to retrieve clothes). Even absent an affirmative indication that the arrestee might have a weapon available or might attempt to escape, the arresting officer has authority to maintain custody over the arrestee and to "remain literally at [the arrestee's] elbow at all times." Chrisman, 455 U.S. at 6. Thus, contraband seen by an officer in plain view while accompanying the arrestee in his home may be lawfully used against the arrestee. Id. at 7-9.

Here, DeBuse chose to reenter his house simply for his own convenience. Allowing reentry on the condition that the officers accompany him was reasonable. Illinois v. McArthur, 531 U.S. 326, 335 (2001). Because the officers were legally entitled to accompany DeBuse as he reentered his home, they were legally in the position to see the rifle hanging on the wall as they entered. Given DeBuse's background as a felon, he could not legally possess that rifle, and that rifle's presence alone constituted probable cause for the second search, without considering the other weapons found in the protective sweep. See United States v. Ford, 22 F.3d 374, 378-79 (1st Cir. 1994). We thus need not evaluate the Government's contention that the protective sweep was lawful. See Maryland v. Buie, 494 U.S. 325, 334 (1990) (to justify protective sweep, there must be articulable facts that would warrant a reasonably prudent officer in believing the area to be swept harbors an individual posing a danger to those on the arrest scene).

DeBuse next argues the second search was illegal because the officers deliberately misled the issuing judge by omitting facts that would have caused the judge to deny the warrant application. Specifically, DeBuse contends if the judge had known the officers knew of the information in the facsimile and had known the first

search was illegal, the judge would not have found sufficient probable cause to issue the search warrant. To be entitled to an evidentiary hearing to attack the veracity of the warrant affidavit, the defendant must allege deliberate falsehood or reckless disregard for the truth, and support the allegations with an offer of proof. Franks v. Delaware, 438 U.S. 154, 171-72 (1978). The district court found DeBuse was not entitled to a hearing because he merely made conclusory allegations and did not carry his burden to show the affidavit contained material or deliberately false statements. We conclude the district court did not abuse its discretion in denying DeBuse a Franks hearing. The affidavit explained the circumstances under which the officers had seen the weapons and, as we stated earlier, the officers were legally in a position to see the first rifle, which alone supports issuance of the search warrant. As for the information contained in the facsimile, we do not see how its inclusion would have detracted from probable cause.

DeBuse also argues the second search was illegal because the officers failed to obtain a "no knock" warrant or give DeBuse notice of the warrant before entering his house. DeBuse failed to show the officers failed to knock and announce their presence before executing the search warrant, however, see United States v. Schenk, 983 F.2d 876, 879 (8th Cir. 1993), and the Fourth Amendment does not require notice to an absent homeowner before execution of a search for which a warrant has issued, United States v. Stefonek, 179 F.3d 1030, 1034 (7th Cir. 1999).

Last, DeBuse argues the district court should have made more of a departure under U.S.S.G. § 5K2.0 and mistakenly believed it could not depart downward under § 5K2.11. In DeBuse's case, we lack authority to review the extent of the district court's departure from the applicable guidelines range, regardless of the district court's reasons for declining to depart further. United States v. McCarthy, 97 F.3d 1562, 1577 (8th Cir. 1996). DeBuse does not assert his sentence violated federal constitutional or statutory law, or was based on an unconstitutional motive or bad

-4-

faith, and the sentencing transcript makes clear the district court understood its authority to depart further, but chose not to do so.

At sentencing, DeBuse testified that when he was paroled in 1993 for assaulting a police officer, his probation officer told him his civil rights were restored under Nebraska law. DeBuse believed this meant he could possess rifles and did not know his possession of them was illegal. According to DeBuse, the rifles were used for deer hunting and target practice, and most of the rifles, including the semiautomatic, belonged to hunting buddies. The owner of the semiautomatic testified that rifle and another belonged to him, and he left them at DeBuse's home because the men shot targets and hunted on DeBuse's land and DeBuse cleaned the guns for him because he was physically handicapped. The district court found that although a probation officer may have told DeBuse his civil rights were restored, the probation officer probably did not tell DeBuse he could possess any gun he wanted, and DeBuse probably knew he could not possess a handgun. After expressing concern that DeBuse possessed "all these guns" while he was under a protection order, the district court nevertheless stated he would grant the downward departure "on the basis that this is outside the heartland . . . and to an extent the case with respect to the use of these firearms. It seems to me that many of these firearms were used for hunting and target practicing . . . ." The district court granted a four-level departure to a sentencing range of 37-46 months, and declined to depart all the way to a sentence of probation because of DeBuse's possession of the semiautomatic weapon.

We thus affirm the denial of DeBuse's motion to suppress, and affirm DeBuse's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.