870 So.2d 26 (2003)
Luis Orlando VASQUEZ, a/k/a Carlos Medina, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-3506.
District Court of Appeal of Florida, Second District.
September 12, 2003.
*27 James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
Luis Orlando Vasquez, a/k/a Carlos Medina (Mr. Vasquez), appeals a judgment for robbery with a firearm. Mr. Vasquez entered a plea of nolo contendere to the charge, reserving the right to appeal an order denying his dispositive motion to suppress the physical evidence linking him to the crime. The evidence was discovered during a protective sweep of a suite of motel rooms occupied jointly by Mr. Vasquez *28 and Jose Castell. Because we conclude the protective sweep of the motel residence was illegal, we reverse. We remand this case, however, to allow the circuit court to consider whether there was clear and convincing evidence of an unequivocal break in the chain of illegality after the protective sweep was performed, thus rendering a subsequent confession and subsequent consents to enter the motel residence voluntary.
On October 17, 2001, at almost midnight, an armed robbery occurred at a Subway restaurant in Sarasota. Officers from the Sarasota Police Department responded to the scene within minutes of the robbery and began investigating the crime. The officers viewed a surveillance video of the armed robbery. The video portrayed two Hispanic males committing the robbery, one slightly taller than the other, wearing specific clothing, bandannas that covered a portion of their faces, and baseball hats. Both suspects were armed with guns, one of which was very distinctive. Within one-half hour of the crime, the officers began combing the area for suspects. Across the street from the Subway restaurant was a motel. The record suggests that this motel served as a residence for many of its guests, including Mr. Vasquez. The officers encountered Mr. Vasquez near the motel shortly after he exited a room.
One officer began a consensual encounter with Mr. Vasquez and asked him questions about where he lived. A second officer soon joined the discussion. Although Mr. Vasquez was Hispanic, he was alone and was not wearing any clothing connected to the robbery. There was nothing about Mr. Vasquez that caused the officers to believe that he might be armed. Mr. Vasquez explained to the officers that he lived at the motel with another man, whom he identified as "Carlos." Mr. Vasquez stated that Carlos was asleep in the motel room alone. Mr. Vasquez agreed to show the officers the room.[1]
As the officers approached the room where Mr. Vasquez claimed he resided, the door suddenly opened. Jose Castell stepped outside, leaving the door open behind him. He began speaking with one of the officers. This officer happened to know Mr. Castell and knew Mr. Castell was addicted to heroin and had previously been convicted of a felony. As the two talked, the officer was able to look past Mr. Castell into the room behind him. There he observed in plain view a full syringe, a pipe that appeared to be intended for illegal drug use, and a single bullet.
At this point, the officers secured both Mr. Vasquez and Mr. Castell outside the motel room door. The officer who had been speaking with Mr. Castell then decided to perform a "protective sweep" of the rooms in which the men resided. This consisted of a main room, a separate bedroom, and a bathroom. The officer drew his weapon, waited fifteen to thirty seconds, crossed the threshold, and entered each room, quickly looking through them. During this entry, the officer observed the bandannas, hats, and cash related to the robbery. As he stepped back outside, the officer announced to his fellow officer that he had discovered this evidence of the robbery.
Soon after the officer came out of the rooms, Mr. Castell, who was handcuffed and dressed only in shorts, asked the officer to retrieve his shirt and shoes from the room. The officer retrieved the shoes and placed them on Mr. Castell's feet. When *29 the officer went back into the room to pick up the shirt, he discovered one of the guns used in the robbery under the shirt. At this point, the officer indicated to Mr. Castell that he had "screwed up real bad" and instructed Mr. Castell not to say anything more. Mr. Castell and Mr. Vasquez were then placed in the back seats of separate police cars and asked to sign forms consenting to a search of their rooms. After some discussion, the two men each signed a form providing consent. Mr. Vasquez also made a statement implicating himself in the crime. The officers did not seek to obtain a search warrant but relied upon the consents thus obtained to reenter the rooms. A complete search revealed additional physical evidence of the crime.
Both men were charged with the armed robbery. Both filed motions to suppress the physical evidence seized from the residence. The cases were combined for purposes of the evidentiary hearing on these motions. After hearing the evidence, the circuit court concluded that the officer's protective sweep of the residence was lawful. Therefore, it ruled that the evidence seen during the sweep and obtained pursuant to the consents provided by Mr. Vasquez and Mr. Castell thereafter was properly admissible in evidence.[2] We conclude that the trial court erred in finding the protective sweep was lawful. We reverse Mr. Vasquez's conviction and remand for further proceedings.
A private home is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment. See Gonzalez v. State, 578 So.2d 729, 734 (Fla. 3d DCA 1991); see also Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (prohibiting warrantless entry into home to effect arrest; reiterating that physical entry of home is chief evil against which wording of Fourth Amendment is directed). A search of a private home without a duly issued search warrant is per se "unreasonable" under the Fourth Amendment, subject only to a few specifically established and narrowly drawn exceptions. Gonzalez, 578 So.2d at 732. The burden is on the state to demonstrate that the procurement of a warrant was not feasible because the exigencies of the situation made the chosen course imperative. State v. Parker, 399 So.2d 24, 28 (Fla. 3d DCA 1981). The constitutional rights and privileges afforded to occupants of private permanent dwellings also apply to motel guests legally occupying the premises. Turner v. State, 645 So.2d 444, 447 (Fla. 1994).
"In the absence of exigent circumstances or permission, the police clearly may not enter a home without a search warrant simply because they think that they have probable cause to believe evidence of a crime may be found therein." Butler v. State, 697 So.2d 907, 908 (Fla. 2d DCA 1997); see also Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). Thus, the officer's view of drugs, drug paraphernalia, or a bullet in Mr. Castell and Mr. Vasquez's motel rooms did not permit the officer to enter the rooms without a warrant.
Similarly, although these items may have provided probable cause to arrest either occupant for possessing drugs or drug paraphernalia as they stood outside the residence, the officers could not constitutionally enter the residence unless the exigencies of the situation made it imperative that they do so prior to seeking *30 a warrant. "If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house...." Vale, 399 U.S. at 33-34, 90 S.Ct. 1969. In Vale, officers appeared at Vale's residence to execute two warrants for his arrest and observed what appeared to be a drug transaction involving Vale outside the home. Before Vale could reenter the home, he was arrested. Officers made a "cursory inspection of the house to ascertain if anyone else was present." Id. at 33, 90 S.Ct. 1969. The Supreme Court specifically rejected the proposition "that an arrest on the street can provide its own `exigent circumstance' so as to justify a warrantless search of the arrestee's house." Id. at 35, 90 S.Ct. 1969. See also Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (holding that search incident to arrest may encompass arrestee's person and area from within which he might gain possession of weapon or destructible evidence, but there is no justification for routinely searching any room other than that in which arrest occurs); State v. Futch, 715 So.2d 992 (Fla. 2d DCA 1998) (holding warrantless search of motel room after occupant was arrested outside room for drug possession could not be justified as search incident to arrest absent other exigent circumstances).
Vale recognized that there may be other exigent circumstances that would permit a reasonable entry into a home when an arrest has taken place outside. 399 U.S. at 34-35, 90 S.Ct. 1969 (listing exceptional situations that would allow entry as consent, emergency, hot pursuit, or evidence in process of being destroyed or removed from jurisdiction). However, none of those circumstances were present in Vale, nor were they present in this case at the time the protective sweep was performed.
The State seeks to justify the immediate but cursory search of the rooms as a "protective sweep" as recognized in Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In Buie, however, the initial entry into the home was justified by an arrest warrant. Officers were executing a warrant for the arrest of Buie, who was suspected of committing armed robbery. 494 U.S. at 328, 110 S.Ct. 1093. After Buie voluntarily came out of his basement and was secured, the arresting officer went down into the basement where he discovered and seized evidence in plain view. Id.
The Supreme Court identified the officer's search of the basement as a "protective sweep," which the Court defined as "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others." Buie, 494 U.S. at 327, 110 S.Ct. 1093. To determine if protective sweeps are constitutional, the Court adopted a standard similar to that adopted in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Buie, 494 U.S. at 331-33, 110 S.Ct. 1093. Finding that a protective sweep incident to arrest raised constitutional issues similar to those raised in a limited patdown for weapons, the Court held that "as a precautionary matter and without probable cause or reasonable suspicion," an officer can "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334, 110 S.Ct. 1093. However, there must be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. In adopting this standard, the Court specifically emphasized in a footnote that "the arrest warrant gave the police every right to enter the home to search for Buie," and that "once inside, the potential for danger *31 justified a standard of less than probable cause for conducting a limited protective sweep." Id. at 334 n. 1, 110 S.Ct. 1093.
Mr. Vasquez's case is distinguishable from Buie in critical respects. First, the officers in this case had no lawful basis for entering Mr. Vasquez and Mr. Castell's residence in the first place. Mr. Vasquez and Mr. Castell were detained outside the residence, not within its confines. There was no warrant permitting entry. See Beauchamp v. State, 742 So.2d 431, 432 (Fla. 2d DCA 1999) (reversing denial of motion to suppress based upon warrantless entry into dormitory room after officer smelled marijuana and obtained occupant's admission that he possessed marijuana; noting, "The officers might have been authorized to conduct a safety sweep of the suite if they had been lawfully permitted to enter it, see Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), but they were not allowed to enter the suite without a warrant for this purpose.").
Even if a Buie standard applied to provide "exigent circumstances" to enter a residence that the officers have no other lawful basis to enter, that standard would require the officers to have articulable facts, not a mere hunch, that would warrant a reasonable belief that the rooms they intended to search harbored a dangerous individual posing a threat to those on the arrest scene. See, e.g., Newton v. State, 378 So.2d 297, 299 (Fla. 4th DCA 1979) (conceding that protective sweep of premises when arrest is taking place would seem a "circumspect thing to do," but reiterating that it is only allowable when officers have reasonable grounds to suspect additional persons may be present that jeopardize officers' security). Here, there were no articulable facts suggesting that anyone other than Mr. Castell and Mr. Vasquez were in these rooms or that anyone who might be in the rooms would be a danger to the officers if they merely shut the door and waited to enter until they obtained a warrant. See Klosieski v. State, 482 So.2d 448 (Fla. 5th DCA 1986) (reversing denial of motion to suppress because officers executing fugitive warrants for persons charged with trafficking in controlled substances arrested suspects outside home and had no reason to believe other persons dangerous to their safety were inside home). The officer may have actually increased the danger to himself by entering the rooms. Id. at 450. The fact that Mr. Vasquez and Mr. Castell were two Hispanic men who lived across the street from a robbed Subway restaurant and had a single bullet did not provide articulable facts supporting a reasonable belief that unknown armed robbers were lurking in their rooms. To the contrary, all of the information provided to the officers suggested that only two men robbed the Subway and only two men resided in the rooms they searched. Under these circumstances, the protective sweep was an unlawful search. We therefore reverse the judgment convicting Mr. Vasquez of armed robbery. However, we remand this case for the circuit court to further consider the motion to suppress.
Because the protective sweep was illegal, the consents to search and confession obtained thereafter are presumed invalid. See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (involving confession after illegal arrest); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978) (involving consent to search after officer illegally began search); see also McCauley v. State, 842 So.2d 897 (Fla. 2d DCA 2003). In order to overcome this presumption, the State must show by clear and convincing evidence that there was an unequivocal break in the chain of any illegality resulting from the protective sweep. *32 See Faulkner v. State, 834 So.2d 400, 403 (Fla. 2d DCA 2003); Findley v. State, 771 So.2d 1235, 1237 (Fla. 2d DCA 2000).
The circuit court's order denying the motion to suppress relied primarily upon its finding that the protective sweep was lawful. As a result, the circuit court did not consider the subsequent events and whether there was an unequivocal break in the chain of illegality. Specifically, the court did not examine whether, based upon the totality of the circumstances, Mr. Castell's request that the officer retrieve clothing from within the room, Mr. Vasquez's confession, or the consent forms signed by both men constituted acquiescence to authority rather than free and voluntary acts performed without regard to the illegal police activity. See Brown, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; Taylor, 355 So.2d 180. We therefore remand this case for the circuit court to address this issue and any further issue that may develop from that analysis.
Reversed and remanded.
SILBERMAN and COVINGTON, JJ., Concur.
NOTES
[1] At the hearing on the motion to suppress, the officer who performed the protective sweep indicated that Mr. Vasquez did not specifically consent to a search of the motel rooms during this discussion.
[2] Mr. Castell has also appealed his convictions. By separate opinion, we reverse and remand his convictions. Castell v. State, 870 So.2d 38, 2003 WL 22103532 (Fla. 2d DCA Sept.12, 2003).