# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3896

_____

United States of America,

*Plaintiff - Appellee,*

v.

Warnell Reid,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2014
Filed: October 20, 2014

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Warnell Reid was convicted of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). The statutory maximum punishment for that violation, unless enhanced, is ten years' imprisonment. 18 U.S.C. § 924(a)(2). Based on Reid's criminal history, however, the district court applied the statutory penalty range of fifteen years to life imprisonment under the Armed Career

Criminal Act, 18 U.S.C. § 924(e), and sentenced Reid to a term of 188 months' imprisonment, with two years of supervised release.

Reid appeals the denial of his motion to suppress evidence seized during a search of his residence and the application of the sentencing enhancement. We conclude that the search complied with the Fourth Amendment, but that Reid's prior conviction for attempted burglary under Missouri law was not a "violent felony" under § 924(e). We therefore affirm the conviction, vacate the sentence, and remand for resentencing.

I.

In 2011, Reid was living with his girlfriend, Earnestine Graham. Graham was serving a term of federal supervised release, and she had violated the conditions of her release. Several law enforcement officers, including deputy United States marshals and St. Louis police detectives, went to Graham's home around 6:30 a.m. on October 10, 2011, to execute an arrest warrant for Graham. The front door was cracked open, and a deputy pushed it open. He saw Graham about eight to ten feet from the doorway. She was dressed in her pajamas. The deputy asked Graham to approach the doorway and told her to turn around. He then handcuffed Graham and pulled her outside the door.

After arresting Graham, the officers asked her if anyone else was inside the home, and she told them only her minor children were inside. Officers then conducted what they described as a "security sweep" of the entire residence. When the sweep was completed, officers allowed Graham to reenter the home to dress. While accompanying Graham to her bedroom, an officer discovered in plain view an SKS assault rifle.

Graham told the officers the firearm belonged to her boyfriend, Reid, and that there were no other firearms in the home. Reid arrived shortly thereafter and parked his vehicle near the residence. After identifying Reid as Graham's boyfriend, officers detained Reid outside the residence.

After advising Graham of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), the officers asked Graham if she would consent to a search of the home. She agreed and signed a consent form. During a search of the home, officers discovered a shotgun on a windowsill in Graham's bedroom, a disassembled pistol, and ammunition.

A grand jury charged Reid with unlawful possession of a firearm as a previously convicted felon. He moved to suppress evidence found in the home, and the district court denied the motion. Reid proceeded to trial, and a jury found him guilty. At sentencing, the district court determined that Reid had sustained three prior convictions for violent felonies, and sentenced him to a term of 188 months' imprisonment.

II.

Reid argues that the district court erred by not suppressing the evidence seized from the residence. He contends that the officers impermissibly entered the house when they found the SKS assault rifle in Graham's bedroom, and that the discovery of other evidence was a direct result of finding the first firearm.

The officers did not have a search warrant for the house, so the question is whether they had a basis to enter without a warrant. The arrest of a person outside a home does not by itself justify a warrantless search of the residence. *United States v. DeBuse*, 289 F.3d 1072, 1074 (8th Cir. 2002). Here, however, Graham was clad only in pajamas, and the district court found that "the deputies allowed Graham to

reenter 712 Thrush to change her clothes." When an arrestee chooses to reenter her home for her own convenience, it is reasonable for officers to accompany her and to monitor her movements. *Illinois v. McArthur*, 531 U.S. 326, 335 (2001); *Washington v. Chrisman*, 455 U.S. 1, 6-7 (1982); *DeBuse*, 289 F.3d at 1074-75. Officers permissibly accompanied Graham to her bedroom where she changed from pajamas into clothes, and a deputy observed the assault rifle in plain view in the bedroom. The seizure of the firearm was thus permissible under the Fourth Amendment.

Reid argues that accompaniment of Graham did not justify the warrantless entry because Graham did not request to reenter her home. It is true that there is no testimony directly quoting Graham as making such a request. But the district court found that the deputies "allowed" Graham to reenter, and this finding is best understood in ordinary usage as a grant of permission. A grant of permission implies a request. The district court likely would have used different language if the court had found that the officers ordered Graham back into the house.

The record supports the inference that Graham wanted to get dressed and that the officers permitted her to reenter the home for that purpose. The lead deputy marshal testified that after arresting Graham, he was going "to allow her to get clothes," and that she was "allowed" to go into her bedroom and change clothes. He explained that this was one of the "courtesies" that he extended to Graham. Hr'g Tr. 7-8, 19. We therefore conclude that our decision in *DeBuse* is controlling and deem it unnecessary to explore when police may bring an arrestee into a home to change clothes or to dress without a request by the arrestee. *Cf. United States v. Gwinn*, 219 F.3d 326, 333 (4th Cir. 2000); *United States v. Butler*, 980 F.2d 619, 621 (10th Cir. 1992); *United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977).

Once the officers located the assault rifle in plain view, they secured consent from Graham to search the house. Graham's consent was sufficient to justify a warrantless search, and the rest of the evidence seized pursuant to the consent search

was properly admitted against Reid. *See Fernandez v. California*, 134 S. Ct. 1126, 1133-34 (2014). Because we conclude that the officers permissibly found and seized the disputed evidence while accompanying Graham to change her clothes or pursuant to Graham's later consent, we need not address whether the presence of minor children justified the "protective sweep" that officers conducted without a warrant or consent.

## III.

Reid also challenges the sentence imposed based on the Armed Career Criminal Act. Under the Act, a defendant convicted of unlawful possession of a firearm or ammunition under 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of fifteen years' imprisonment, and a maximum punishment of life, if the defendant has three previous convictions for a violent felony or serious drug offense, or both. 18 U.S.C. § 924(e). Otherwise, the maximum punishment is ten years' imprisonment. *Id*. § 924(a)(2). The Act defines "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year" that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B). It is undisputed that Reid had sustained at least two prior violent felonies, but he challenges the district court's determination that his prior conviction for attempted burglary in Missouri was a third violent felony.

In *James v. United States*, 550 U.S. 192 (2007), the Supreme Court addressed whether a conviction for attempted burglary qualified as a "violent felony" under § 924(e). This court previously had held in *United States v. McKinney*, 328 F.3d 993, 995 (8th Cir. 2003), that attempted burglary in Missouri was a violent felony, but "*James* clarified the approach that the federal courts are to take in ascertaining whether an offense qualifies as a violent felony under the ACCA's residual provision." *United States v. Spudich*, 510 F.3d 834, 838 (8th Cir. 2008). *James*

identified the proper inquiry as "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

Considering the Florida statute on attempted burglary, *James* asked "whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses—here, completed burglary." 550 U.S. at 203. Florida law, as interpreted by the State's highest court, "require[d] an overt act directed toward the entry of a structure," *id.* at 206, and *James* held that attempted burglary in Florida was sufficiently similar to burglary to qualify as a violent felony. The Court found it unnecessary to address whether "more attenuated conduct"—such as the "casing" of a building or neighborhood—would suffice, but suggested that a statute requiring only "preparatory conduct" might well not qualify. *Id.* at 205 n.4 & 206.

*McKinney* did not have the benefit of the analytical framework established in *James*, and it is appropriate to consider anew in light of the Supreme Court's guidance whether attempted burglary in Missouri is a violent felony. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir. 1997). *McKinney* focused on the fact that attempted burglary in Missouri requires a "substantial step" toward burglary, 328 F.3d at 995, but did not consider the range of conduct covered by the Missouri statute.

The Missouri statute, it turns out, is not like the Florida statute at issue in *James*. A person commits attempted burglary in Missouri if he "does any act which is a substantial step towards the commission of the offense." Mo. Rev. Stat. § 564.011.1. Commentary to the Missouri attempt statute says that "reconnoitering the place contemplated for the commission of the offense" or "possession of materials to be employed in the commission of the offense, which are specially designed for such unlawful use" can be a substantial step: These acts "should not be held

-6-

insufficient as a matter of law." Comment to Mo. Rev. Stat. § 564.011. *See State v. Molasky*, 765 S.W.2d 597, 600-01 (Mo. 1989); *O'Dell v. Armontrout*, 878 F.2d 1076, 1079 (8th Cir. 1989).

The government has furnished no empirical data about "ordinary" convictions in Missouri for attempted burglary, *cf. Chambers v. United States*, 555 U.S. 122, 129 (2009), and reported appeals are unlikely to encompass the ninety-four percent of state convictions that are the result of guilty pleas, *see Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), so our decision rests on the statute and commentary. In determining what is the "ordinary case" for purposes of § 924(e), the government need not show that "every conceivable factual offense" presents a serious potential risk of injury. *James*, 550 U.S. at 208. "[U]nusual cases" that can be hypothesized are not sufficient to exclude "a prototypically violent crime" from coverage. *Id.* But in light of the Missouri statute and commentary, and in the absence of a Missouri court decision that narrows the scope of the statute as in Florida, *cf. United States v. Lynch*, 518 F.3d 164, 170 (2d Cir. 2008), we cannot dismiss as hypothetical or extraordinary the potential that a person could be convicted of attempted burglary in Missouri for casing a building or possessing specially designed burglary tools without committing "an overt act directed toward the entry of a structure." *Id*. at 206.

Attempted burglary in Missouri, therefore, is comparable to the attempt laws from Utah, Oklahoma, Texas, and Washington that *James* said "could be satisfied by preparatory conduct that does not pose the same risk of violent confrontation and physical harm posed by an attempt to enter a structure illegally." *Id.* at 205 & n.4. Sister circuits have held that violations of these state statutes do not qualify as predicate felonies under § 924(e). *Id*. (citing *United States v. Weekley*, 24 F.3d 1125, 1127 (9th Cir. 1994) (Washington); *United States v. Permenter*, 969 F.2d 911, 913 (10th Cir. 1992) (Oklahoma); *United States v. Strahl*, 958 F.2d 980, 986 (10th Cir. 1992) (Utah); *United States v. Martinez*, 954 F.2d 1050, 1054 (5th Cir. 1992) (Texas)). Attempted burglary in Missouri is also comparable to attempted second-

degree burglary in Arizona, which is not a "violent felony" according to the Tenth Circuit, because the statute prohibits "attenuated conduct" such as "reconnoitering the place contemplated for the commission of the crime." *United States v. Martinez*, 602 F.3d 1166, 1172-73 (10th Cir. 2010). The Missouri statute is distinguishable from the Minnesota statute discussed in *United States v. Smith*, 645 F.3d 998 (8th Cir. 2011), which requires "more than preparation" to justify a conviction for attempted burglary, and appears to cover only conduct that involves "a level of risk that is indistinguishable from the 'overt act directed toward entering' described in *James*." *Id.* at 1004.

The Missouri statute under which Reid was convicted prohibits preparatory conduct that presents a lesser risk of violent confrontation than does an act directed toward entry of a structure. Consistent with other circuits that have considered similar statutes, we cannot conclude that the conduct encompassed by the elements of the Missouri offense of attempted burglary, in the ordinary case, presents a serious potential risk of injury to another. Therefore, Reid's conviction for attempted second degree burglary in Missouri does not constitute a "violent felony" under § 924(e).

\*　　\*　　\*

For these reasons, the judgment of conviction is affirmed, but the sentence is vacated, and the case is remanded for resentencing consistent with this opinion. Our decision concerning § 924(e) does not address the separate question whether Reid qualifies as a "career offender" under § 4B1.1 of the United States Sentencing Guidelines, given that the definition of "crime of violence" in USSG § 4B1.2 and its commentary specifically includes attempting to commit a crime of violence. *See United States v. Ross*, 613 F.3d 805, 809-10 (8th Cir. 2010).

---