IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

     Appellant,

v.

STACEY RENEE MCRAE,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1232

Opinion filed June 21, 2016.

An appeal from the Circuit Court for Washington County.
Christopher N. Patterson, Judge.

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Assistant Attorney General, Tallahassee, and Shalla P. Jefcoat, Assistant State Attorney, Chipley, for Appellant.

Nancy A. Daniels, Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellee.

WINOKUR, J.

     The State appeals the lower court's order granting Stacey Renee McRae's motion to suppress her statements to police and all physical items seized from her motel room and vehicle. The State argues the court erred in suppressing her post-

Miranda statements because the totality of the circumstances justified a protective sweep of the motel room and further questioning of McRae.[1] We agree and reverse.

I.

The parties do not dispute the court's factual findings leading to McRae's arrest for armed robbery. On December 30, 2013, a convenience store was robbed in Vernon. A surveillance camera captured an image of two women. One woman's face was uncovered as she pointed a firearm at the clerk. A surveillance video also captured images of a vehicle arriving and leaving, indicating there was a third person driving the vehicle. On January 3, 2014, a second robbery occurred at a convenience store in DeFuniak Springs. The perpetrator was a lone male with a firearm, and the victim reported a female driver. A surveillance video indicated the robbers were driving a similar vehicle to the one used in the Vernon robbery.

The police issued a BOLO generated from evidence collected in both robberies. The BOLO included the following evidence: a still-frame from an in-store surveillance video, showing the face of a woman holding a firearm pointed at the clerk; a possible tag number of the vehicle; and a picture of a maroon Ford Taurus, similar to the vehicle used in both robberies.

---

[1] Because the State does not challenge the suppression of the firearm or items seized from McRae's vehicle, we do not address those portions of the order below.

On January 6, a sergeant with the Bay County Sheriff's Office discovered a vehicle at a motel closely matching the description of the vehicle in the BOLO. Lieutenant Daffin of the Bay County Sheriff's Office and approximately ten other officers assembled at the motel. The car was parked directly in front of a motel room. Two officers knocked on the motel room door. McRae answered the door and Lt. Daffin recognized her as the suspect in the Vernon robbery holding the firearm. Officers grabbed McRae and removed her from the room. Officers next conducted a protective sweep of the room for other occupants, as they were unable to see behind the bed or the bathroom area.

After the protective sweep, officers brought McRae back into the room and gave her Miranda warnings. McRae gave a post-Miranda statement to police in which she admitted involvement in the armed robbery. When asked if there were any weapons in the room, McRae responded that there was a revolver in the nightstand, which an officer retrieved. Police later took McRae to the police station for questioning. The vehicle was towed and later searched pursuant to a warrant.

II.

McRae filed a motion to suppress the statements made to police and all evidence collected from her room and vehicle, "after the illegal entry of her motel room." McRae argued the police acted illegally as they did not have a search warrant, nor was there consent or exigent circumstances justifying the search. In

3

response, the State argued the police acted legally when officers knocked on McRae's door. Once the officers recognized McRae as the suspect in the surveillance photo, they were justified in detaining her and conducting a protective sweep in the interest of officer safety. At the time law enforcement knocked on McRae's door, police knew there were at least two other perpetrators and a possible firearm used in the armed robbery.

The order granting the motion to suppress, provided that:

> This Court determines that law enforcement had neither a warrant nor Defendant's consent to enter the motel room. There is no evidence that law enforcement sought to assist someone who was injured or to render first aid. Based upon the evidence as presented there was no evidence of any exigent circumstance, other than an exigency created by law enforcement. This Court is bound by the principles announced in Higginbotham v. State, 17 So. 3d 828 (Fla. 1st DCA 2009); Lee v. State, 856 So. 2d 1133 (Fla. 1st DCA 2003) and Vasquez v. State, 870 So. 2d 26 (Fla. 2d DCA 2003). The evidence seized in the motel room, any Defendant statement and any subsequent search of the vehicle using that information is not legally justified and is hereby suppressed.

III.

A.

"We review the suppression order to determine whether competent substantial evidence supports the factual findings; we review de novo the trial court's application of the law to the facts." State v. DeLuca, 40 So. 3d 120, 123

4

(Fla. 1st DCA 2010). The lower court's ruling on a motion to suppress is presumed correct on appeal; therefore, we view "the evidence and all reasonable inferences in a light most favorable to sustaining the order." Id. Because there is no dispute as to the court's factual findings, we review its conclusion as to the constitutionality of law enforcement's actions *de novo*.

Each of the steps taken by law enforcement leading to McRae's statements was lawful. The knock at the door, the seizure of McRae, the sweep of the motel room, and the questioning of McRae were all permissible. Each of these actions will be discussed in turn.

1. *The officers' knocking on the motel room door did not implicate the Fourth Amendment*

A private home (including a motel room) "is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment." Gonzalez v. State, 578 So. 2d 729, 734 (Fla. 3d DCA 1991); see also Payton v. New York, 445 U.S. 573 (1980) (prohibiting warrantless entry into a home to effect arrest and reiterating that "[t]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); Turner v. State, 645 So. 2d 444, 447 (Fla. 1994) (stating that for purposes of Fourth Amendment protections, "[a] motel room is considered a private dwelling if the occupant is there legally, has paid or arranged to pay, and has not been asked to leave"). Even so, police, like any other citizen, may approach a residence and knock, hoping that

5

the occupant will open the door. See Powell v. State, 120 So. 3d 577, 584 (Fla. 1st DCA 2013) ("Governmental actors, like private actors, have a limited license to approach a dwelling on a defined path, knock on the front door, briefly await an answer, and either engage in a consensual encounter with the resident or immediately depart."). This investigative technique—known as a "knock and talk"—does not require reasonable suspicion or probable cause. Jardines v. State, 73 So. 3d 34, 46 (Fla. 2011), *aff'd*, 133 S. Ct. 1409 (2013) (noting that "police generally may initiate a 'knock and talk' encounter at the front door of a private residence without any prior showing of wrongdoing"); see also United States v. Cruz–Mendez, 467 F.3d 1260, 1264 (10th Cir. 2006) ("[A] 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion."); State v. Morsman, 394 So. 2d 408, 409 (Fla. 1981) ("Under Florida law it is clear that one does not harbor an expectation of privacy on a front porch where salesmen or visitors may appear at any time.").

The trial court order stated, "[a]ccording to LT. Jason Daffin, BCSO, members of law enforcement knocked on the motel door, which was answered by [McRae]." While officers certainly had reason to suspect that the robbers might be in the motel room, they were permitted to knock on the motel room door without any particular level of suspicion. See Jardines, 73 So. 3d at 46. Thus, police acted lawfully in knocking on McRae's motel room door.

6

## 2. Probable cause was established when police recognized McRae as the perpetrator from the picture in the BOLO

Once McRae answered the door and Lt. Daffin recognized her as the robber, police had probable cause for her arrest without a warrant. See § 901.15(2), Fla. Stat. (providing instances when an arrest without a warrant is lawful); see also United States v. Tobin, 923 F.2d 1506 (11th Cir. 1991) ("Probable cause exists when under the 'totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); United States v. Watson, 423 U.S. 411, 423-24 (1976) (holding a warrantless arrest of an individual in a public place is lawful as long as the arrest is supported by probable cause). Once probable cause was established, officers could remove McRae from the room's threshold. See United States v. Crasper, 472 F.3d 1141, 1148 (9th Cir. 2007) (holding that "when a suspect voluntarily opens the door of his residence in response to a non-coercive 'knock and talk' request, the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity"); see also Byrd v. State, 481 So. 2d 468, 472 (Fla. 1985) (recognizing that several federal circuit courts have held that the threshold area of a residence is a public place "wherein a warrant is not required to effectuate a valid arrest"); see generally States v. Vaneaton, 49 F.3d 1423, 1426-27 (9th Cir. 1995) (holding that police may make a warrantless arrest of a suspect who voluntarily opens the door

7

to his residence in response to a knock by the police). Even if police were not justified in reaching into the motel room and removing McRae from the room's threshold, the seizure is still legal as exigent circumstances permitted the intrusion. See Mercier v. State, 579 So. 2d 308, 309 (Fla. 2d DCA 1991) ("A warrantless entry must be justified by probable cause and exigent circumstances."). Whether exigent circumstances existed is addressed below.

### 3. *The warrantless entry and protective sweep were based on exigent circumstances*

"[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 393-94 (1978). The need for a legitimate protective sweep constitutes an exigent circumstance permitting entry into an area protected by the Fourth Amendment. Maryland v. Buie, 494 U.S. 325 (1990). "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 337. Likewise, it follows that "[i]f, during the course of a legitimate knock and talk, a suspect's actions create exigent circumstances, officers may abandon their knock and talk and perform a warrantless entry and a protective sweep." United States v.

8

Willis, 711 F. Supp. 2d 683, 694 (E.D. Texas 2010); see also United States v. Jones, 239 F.3d 716, 721–22 (5th Cir. 2001) (finding that the suspect's conduct, rather than the officers' decision to conduct a "knock and talk," created the exigency where the officer knocked on a screen door, saw a firearm on the table in plain view, and entered the residence to secure the firearm); State v. Ojeda, 147 So. 3d 53, 67 (Fla. 3d DCA 2014) (Rothenberg, J., dissenting).

The exigent circumstances exception to the warrant requirement requires that the warrantless entry by police on to private property be reasonable given the totality of the circumstances. See Lee v. State, 856 So. 2d 1133, 1136 (Fla. 1st DCA 2003) ("There is no exhaustive list of what constitutes exigent circumstances to permit a warrantless entry of a constitutionally protected space."). A set of facts must exist that precludes taking the time to secure a warrant. See Davis v. State, 834 So. 2d 322, 327 (Fla. 5th DCA 2003) ("The sine qua non of the exigent circumstances exception is a compelling need for official action and no time to secure a warrant.") (quotations omitted). Officer safety has long been recognized as an exigent circumstance justifying warrantless entry of a residence. See Markus v. State, 160 So. 3d 488, 492 (Fla. 1st DCA 2015) (stating "[t]o rebut the presumed illegality of warrantless entry by police officers, the exigent circumstance must involve a threat to the safety of the public, property, or police which required immediate action by officers with no time to obtain a warrant"); see also Bethel v.

9

State, 93 So. 3d 410, 414 (Fla. 4th DCA 2012) (finding exigent circumstances—"to protect officers' safety" existed to justify a warrantless entry into the curtilage of the defendant's house where the officer recognized the butt of a handgun sticking out of the defendant's pocket); Riggs v. State, 918 So. 2d 274, 279 (Fla. 2005) ("The kinds of exigencies or emergencies that may support a warrantless entry include those related to the safety of persons or property, as well as the safety of police.") (quoting Rolling v. State, 695 So. 2d 278, 293 (Fla. 1997)).

The circumstances here justified a protective sweep of the room. Officers did not know who was in the room until McRae answered; believed that McRae was accompanied by at least one, if not two, accomplices; and knew that the perpetrators were armed. Police were already visible to McRae and whoever might have been in the room when she opened the door; therefore, turning away and leaving to seek an arrest or search warrant would have been unreasonable in light of the officers' knowledge that the perpetrators were armed. Given these circumstances, the officers' fear for their safety was reasonable. Because police had probable cause that McRae had committed an armed robbery and because exigent circumstances (i.e. officer safety) existed, police acted lawfully in removing McRae from the threshold of her motel room and conducting a protective sweep.

It is noteworthy that the officers did not attempt to search the room under the guise of a protective sweep. Instead, they simply confirmed that the room was secure. Even if the protective sweep were impermissible, it does not appear that any evidence was seized from the room as a result.[2]

### 4. *The arrest of McRae and her statements to police were lawful*

After the protective sweep, officers brought McRae back into the room. While officers could have questioned McRae outside of the motel room, it should be noted that McRae testified she was wearing only underwear and a tank top. See generally Illinois v. McArthur, 531 U.S. 326, 335 (2001) (holding that it is reasonable for an officer to condition reentry on the condition that the officers accompany the suspect); United States v. DeBuse, 289 F.3d 1072, 1073 (8th Cir. 2002) (holding officers were legally entitled to enter the defendant's home following his arrest outside his home where the defendant was barefoot and requested permission to reenter to retrieve his shoes, keys, and wallet). After Miranda warnings, McRae made incriminating statements and indicated that a

---

[2] The motion to suppress sought the exclusion of several items besides the revolver: clothing, computer, camo jacket, gloves, mace/pepper spray, scarf and cap, and hoodies. Nothing in the evidence or arguments made any reference to these items. It is not clear whether these items were seized from the motel room or the auto, which officers procured a warrant to search. For instance, Lt. Daffin testified he did not recall whether other items of evidence were removed from the room.

revolver was in the nightstand. Because all of the events leading to her arrest and questioning were lawful, the court erred in suppressing her statements.

## IV.

The trial court's ruling was premised upon two grounds: first, the absence of a warrant, noting that law enforcement had time to secure a warrant; and second, the absence of exigent circumstances such as "someone who was injured." Neither of these grounds justifies suppression of the evidence.

## A.

Lt. Daffin testified that he did not believe probable cause for a warrant existed at the time the officers arrived at the motel. This assessment seems sound. Without knowing who was in the motel room, it is difficult to conclude that the officers had probable cause for an arrest warrant, much less a warrant to search the room. The officers cannot be faulted for failing to secure a warrant they could never have obtained. Because the officers' "knock and talk" investigation was lawful, we do not need to determine whether or not the officers had sufficient evidence to acquire a search warrant prior to knocking on McRae's door. Either they had legal authority to support their actions, or they did not, regardless of whether they had time to secure a warrant. As stated above, each of their actions was legal. Accordingly, the lack of a warrant does not support the order below.

## B.

As for "exigent circumstances," as stated above the officers were justified in conducting a protective sweep of the motel room. The trial court, however, concluded that any exigency was "created by law enforcement" so that officers could not rely on the exigency to justify entry into the motel room. This ruling was error for two reasons. First, the "police-created exigency" exception to the exigent-circumstances rule has been significantly curtailed by the United States Supreme Court in Kentucky v. King, 563 U.S. 452 (2011). Second, even if King did not apply, the cases on which the trial court relied are clearly distinguishable.

In King, the police loudly knocked on the door of a residence and announced their presence, causing the occupants to attempt to destroy evidence, which in turn caused the officer to forcibly enter the apartment to prevent the destruction of evidence. 563 U.S. at 456. When police entered the apartment, they discovered three people in the room, including a guest smoking marijuana. The officers conducted a protective sweep of the apartment and discovered marijuana and powdered cocaine in plain view. In a subsequent search, they discovered crack cocaine, cash, and drug paraphernalia. Id. at 458.

The Kentucky Supreme Court held that exigent circumstances could not justify the search because it was reasonably foreseeable that the occupants would destroy evidence when the police knocked on the door and announced their presence. The Supreme Court disagreed, holding that warrantless entry to prevent

13

the destruction of evidence is permissible even if the destruction stemmed from the police knocking, unless the police were "engaging or threatening to engage in conduct that violates the Fourth Amendment." Id. at 462. By example, the Court noted that police "announcing that they would break down the door if the occupants did not open the door voluntarily" would violate the Fourth Amendment. Id. at 471. See e.g. United States v. Lucas, 462 Fed. Appx. 48, 50 (2d Cir. 2012) (finding that officers did not threaten to engage in conduct violating the Fourth Amendment and that exigent circumstances existed where "officers did not know if there were other individuals in the apartment who might be armed and pose a threat to their safety"). Thus, any Florida case holding that a warrantless entry is illegal merely because the police "created the exigency" by knocking on the door has been abrogated by King. See Art. I, § 12, Fla. Const. (The Florida Constitution requires Florida courts to follow United States Supreme Court decisions construing the Fourth Amendment to the United States Constitution).

This is true of the cases the trial court cited in its order: Higginbotham v. State, 17 So. 3d 828 (Fla. 1st DCA 2009); Lee v. State, 856 So. 2d 1133 (Fla. 1st DCA 2003); Vasquez v. State, 870 So. 2d 26 (Fla. 2d DCA 2003). None of these cases require suppression here.

In Higginbotham, this Court held that the possible destruction of drugs was not an exigent circumstance justifying a warrantless entry of the defendant's motel

14

room. 17 So. 3d at 828. This holding was in part based on its finding that "law enforcement may not sit and wait [] (when they could be seeking a warrant) then utilize their self-imposed delay to create exigent circumstances." Id. at 829 (quoting Hornblower v. State, 351 So. 2d 716, 718-19 (Fla.1977)). This observation is inconsistent with King. Moreover, officers in this case could not have secured a warrant because they did not believe probable cause existed prior to recognizing McRae.

In Lee, police were monitoring a drug transaction using an informant when the suspects involved moved to a different room in the hotel. 856 So. 2d at 1135. Officers approached the motel room, knocked on the door, announced that law enforcement was present, and then broke open the door with a battering ram. Once inside, police saw cocaine and money in plain view. Id. They asked permission to search the room and warned that if the individuals did not consent they would seek a search warrant. The occupants consented to the search. Id. In justifying the warrantless entry into the room, police argued exigent circumstances, including officer safety, control over suspects and rooms, and the possible destruction of evidence. Id. at 1137. This Court rejected the existence of exigent circumstances and held that "the possibility that the drugs might be destroyed was not a valid exigency, because the possibility did not actually exist until the officers knocked on the door and announced their presence." Id. at 1138. Again, this observation is

15

inconsistent with <u>King</u>. In any event, this case is distinguishable from <u>Lee</u>, as the present case involves a legitimate protective sweep.

In <u>Vasquez</u>, officers approached a motel to investigate an armed robbery that occurred across the street at a Subway restaurant. 870 So. 2d at 28. Police encountered Vasquez as he was leaving the motel. The officers engaged in a consensual encounter wherein Vasquez explained that he lived at the motel with another man named Carlos. Vasquez told police that Carlos was asleep in the room alone. Police had no reason to believe that Vasquez was carrying a weapon. Eventually, Vasquez agreed to show the officers his motel room. <u>Id.</u> Upon arriving at the room, the door opened and a second man stepped out. The man left the door open. During a conversation with the man, one of the officers looked into the room and saw drug paraphernalia and a single bullet in plain view. In turn, the officers secured both men outside of the room. <u>Id.</u> One of the officers then decided to conduct a protective sweep of the room. During the sweep, he found several items related to the armed robbery. The officer went in a second time at the request of one of the men and discovered the gun used in the armed robbery under a shirt. <u>Id.</u> at 29. There was no reason in <u>Vasquez</u> for police to believe that there were more people in the motel room. As a result, it is distinguishable from the present case where police were searching for possibly two additional suspects who were armed.

V.

16

The court below seems to have focused on actions officers could have taken, such as waiting for the innkeeper or seeking a warrant. But we are not called upon to grade or second-guess law enforcement. Our task is only to determine whether the actions they chose were consistent with the State and Federal Constitutions. We find that they were. For the foregoing reasons, we reverse that portion of the Order suppressing McRae's statements and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED with instructions.

WOLF and BILBREY, JJ., CONCUR.